Kristin D. Rizzuto and Joe Rizzuto, Plaintiffs-Appellants,

v.

Cincinnati Insurance Company and Jackson Street Real Estate, LLC., Defendants-Respondents,

Hartford Underwriters Insurance Company, Orlandini Company, Inc., The Traveler's Insurance Company, and/or The Traveler's Property Casualty Insurance Company, C.D. Smith Construction Inc. and ABC Insurance Company, Defendants.

Court of Appeals

*No. 02–1686. Submitted on briefs January 7, 2003.—Decided February 25, 2003.*

2003 WI App 59

(Also reported in 659 N.W.2d 476.)

581

On behalf of the plaintiffs-appellants, the cause was submitted on the briefs of *Michael Riley* and *Molly K. Martin* of *Atterbury & Riley, S.C.*, Madison.

On behalf of the defendants-respondents, the cause was submitted on the brief of *Michael S. Murray* and *Matthew W. Moran* of *Kasdorf, Lewis & Swietlik, S.C.*, Milwaukee.

Before Wedemeyer, P.J., Fine and Schudson, JJ.

¶ 1. FINE, J.   Kristin D. Rizzuto and Joe Rizzuto appeal from an order granting summary judgment in favor of Jackson Street Real Estate, LLC, and its insurer, Cincinnati Insurance Company. The Rizzutos sued Jackson Street and Cincinnati Insurance under the Wisconsin Safe Place Statute, WIS. STAT. § 101.11, after Kristin Rizzuto was injured when a granite tile in an elevator owned by Jackson Street fell on her head.[1] The trial court concluded that Jackson Street was not liable for Kristin Rizzuto's injuries because it did not have notice that the tile was defective. The Rizzutos claim that notice was not a required element of their *prima facie* case because:   (1) the loose tile was a structural defect; and (2) a *per se* breach of the safe

---

[1] The Rizzutos also filed a claim against C.D. Smith Construction, Inc., Orlandini Company, Inc., and their respective insurers. The Rizzutos alleged that C.D. Smith Construction and Orlandini Company negligently installed the granite tiles. The negligent-installation claim was still pending before the trial court on a motion for summary judgment when this appeal was filed.

place statute occurred when the tile was allegedly installed in violation of the Wisconsin Administrative Code. We affirm.

## I.

¶ 2. Kristin D. Rizzuto, who worked in the Jackson Street building, was injured on August 14, 1998, when a twenty-pound granite tile fell from an elevator wall onto her head. The granite tiles on the elevator walls were not an original part of the building. They were installed on the walls and the floors of the elevator during a reconstruction project in 1988. The tiles, as they were installed originally, were attached to the elevator walls by adhesive.

¶ 3. Jackson Street bought the building in January of 1998, approximately seven months before the accident. It remodeled the building prior to August of 1998. As part of the remodeling project, paint was removed from the doors and control panels of the elevators. After Kristin Rizzuto was injured, Jackson Street added mechanical anchors to secure the tiles.

¶ 4. The Rizzutos alleged, among other things, that Jackson Street violated the safe place statute because it "failed to construct, repair, or maintain such public building as to render same safe and failed to maintain said building such that its frequenters and invitees were free from danger to life, health, safety, or their welfare in the use of said building as a public building."

¶ 5. Kristin Rizzuto was deposed. She testified that the elevators "shook as you rode up in them." She admitted that she never made a formal complaint to her employer or to the maintenance department about the elevators.

¶ 6.   A partner in Jackson Street and the manager of the building were also deposed. The manager testified that the company responsible for cleaning the elevators every night did not report any physical defects in the building. The partner also testified that no one complained about shaking in the elevators during July or August of 1998.

¶ 7.   Jackson Street and Cincinnati Insurance sought summary judgment based upon the deposition testimony. They alleged that the granite tile that fell off of the elevator wall was a "condition associated with the structure" under the safe place statute. To be liable for a condition associated with the structure, the owner of a public building must have actual or constructive notice of its existence. *See Barry v. Employers Mut. Cas. Co.*, 2001 WI 101, ¶ 23, 245 Wis. 2d 560, 571–572, 630 N.W.2d 517, 522–523. Thus, Jackson Street and Cincinnati Insurance argued that the Rizzutos' claim should be dismissed because there was no evidence that Jackson Street had actual or constructive notice that the tile was defective.

¶ 8.   The Rizzutos asserted that summary judgment was inappropriate because an issue of fact existed as to whether Jackson Street had notice of the defective tile. The Rizzutos contended that Kristin Rizzuto's deposition testimony that the elevator shook established that "anyone riding in it would have had constructive notice of the potential for a defective tile." At a hearing on the motion, the Rizzutos further claimed that Jackson Street had constructive notice of a defect when it renovated the building in 1998 because, they argued:

> [M]aterials, tools, [and] men were all transported, workers were all transported in these elevators. So it's

conceivable that something could have jarred, or jostled, or cracked one of these tiles during construction . . . .

We're looking at a situation where they were actively engaged in monitoring the remodeling of the building. Yet both the manager and one of the owners testified that they didn't order an inspection before they opened for business.

¶ 9.   As noted, the trial court granted the motion for summary judgment. It concluded that the safe-place-statute claim against Jackson Street and Cincinnati Insurance should be dismissed because the Rizzutos did not establish that Jackson Street had notice that the tile was defective:

I just don't see the circumstance where they're under the Safe Place Statute; where Jackson Street Real Estate would have notice, or constructive notice that there was anything wrong with the elevator and these panels in the elevator. I don't see a prima facie negligence that creates the constructive notice of safe place responsibilities on Jackson Street. And I see the theories as it [*sic*] relates to Jackson Street and Cincinnati as speculative. And based upon that I am granting the motion of Cincinnati and Jackson Street for summary judgment.

## II.

¶ 10.   Our review of the trial court's grant of summary judgment is *de novo,* and we apply the same standards as did the trial court. *Green Spring Farms v. Kersten,* 136 Wis. 2d 304, 315–317, 401 N.W.2d 816, 820–821 (1987). First, we examine the pleadings to determine whether or not a proper claim for relief has been stated. *Id.*, 136 Wis. 2d at 315, 401 N.W.2d at 820.

589

If the complaint states a claim and the answer joins the issue, our inquiry then turns to whether any genuine issues of material fact exist. *Ibid.* WISCONSIN STAT. RULE 802.08(2) sets forth the standard by which summary judgment motions are to be judged:

> The judgment sought shall be rendered if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

¶ 11. The Wisconsin Safe Place Statute provides, as relevant: "Every employer and every owner of a place of employment or a public building now or here-after constructed shall so construct, repair or maintain such place of employment or public building as to render the same safe." WIS. STAT. § 101.11(1). This section applies to three categories: (1) employers; (2) owners of places of employment; and (3) owners of public buildings. *Naaj v. Aetna Ins. Co.*, 218 Wis. 2d 121, 126, 579 N.W.2d 815, 817 (Ct. App. 1998). It is undisputed that Jackson Street is the owner of a public building. *See* WIS. STAT. § 101.01(12).[2] The owner of a public building is liable for: (1) structural defects; and

---

[2] WISCONSIN STAT. § 101.01(12) provides:

"Public building" means any structure, including exterior parts of such building, such as a porch, exterior platform, or steps providing means of ingress or egress, used in whole or in part as a place of resort, assemblage, lodging, trade, traffic, occupancy, or use by the public or by 3 or more tenants. When used in relation to building codes, "public building" does not include a previously constructed building used as a community-based residential facility as defined in s. 50.01 (1g) which serves 20 or fewer residents who are not related to the operator or administrator or an adult family home, as defined in s. 50.01 (1).

(2) unsafe conditions associated with the structure of the building.[3] *Ruppa v. American States Ins. Co.*, 91 Wis. 2d 628, 639–640, 284 N.W.2d 318, 322 (1979). "The classification of the hazardous property condition is often crucial in safe place cases because of the differing notice requirements for each." *Barry*, 2001 WI 101 at ¶ 22, 245 Wis. 2d at 570, 630 N.W.2d at 522.

¶ 12.   A structural defect is "a hazardous condition inherent in the structure by reason of its design or structure." *Id.*, 2001 WI 101 at ¶ 28, 245 Wis. 2d at 574, 630 N.W.2d at 524. "A property owner . . . is liable for injuries caused by structural defects regardless of whether he or she knew or should have known that the defect existed." *Id.*, 2001 WI 101 at ¶ 22, 245 Wis. 2d at 570, 630 N.W.2d at 522. Examples of a structural defect include:   the failure to install a handrail along a staircase, *Harnett v. St. Mary's Congregation*, 271 Wis. 603, 614, 74 N.W.2d 382, 388 (1956), a hole in a roof without a surrounding railing, *Umnus v. Wisconsin Pub. Serv. Corp.*, 260 Wis. 433, 435, 51 N.W.2d 42, 44 (1952), and a false ceiling that did not support a worker's weight, *Bellmann v. National Container Corp.*, 5 Wis. 2d 318, 320–321, 92 N.W.2d 762, 763–764 (1958).

¶ 13.   An unsafe condition associated with the structure of the building arises when an originally safe structure is not properly repaired or maintained. *Barry*, 2001 WI 101 at ¶¶ 25, 27, 245 Wis. 2d at 572–573, 630

---

[3] An employer, but not the owner of a public building, may also be liable for a third type of unsafe property condition:   unsafe conditions not associated with the structure of the building. *See Barry v. Employers Mut. Cas. Co.*, 2001 WI 101, ¶ 21 n.4, 245 Wis. 2d 560, 570, 630 N.W.2d 517, 522.

N.W.2d at 523. A property owner must have actual or constructive notice of the defect to be liable for an unsafe condition associated with the structure of the building. *Pettric v. Gridley Dairy Co.*, 202 Wis. 289, 293, 232 N.W. 595, 597 (1930). Examples of an unsafe condition associated with the structure include: improper lighting, *id.*, 202 Wis. at 290, 232 N.W. at 596, a loose window screen, *Wright v. St. Mary's Hosp.*, 265 Wis. 502, 503, 61 N.W.2d 900, 901 (1953), and a missing theater seat, *Boutin v. Cardinal Theatre Co.*, 267 Wis. 199, 202, 64 N.W.2d 848, 850 (1954).

¶ 14. The Rizzutos allege for the first time on appeal that notice was not a required element of their claim because the loose tile was a structural defect. Jackson Street and Cincinnati Insurance thus argue that the Rizzutos waived this issue on appeal because they did not present it to the trial court. We disagree.

¶ 15. Generally, an appellate court will not review an issue that is raised for the first time on appeal. *Wirth v. Ehly*, 93 Wis. 2d 433, 443–444, 287 N.W.2d 140, 145 (1980). We may, however, review new arguments on an issue that has been raised before the trial court. *See State v. Holland Plastics Co.*, 111 Wis. 2d 497, 505, 331 N.W.2d 320, 324 (1983). The Rizzutos' claim on appeal is a variation of what they argued to the trial court. When the trial court determined that the Rizzutos did not present evidence that the defendants had notice of the loose tile, it implicitly concluded that the tile was an unsafe condition associated with the structure of the building. Accordingly, we now turn to the issue of whether the loose tile was a structural defect or an unsafe condition associated with the structure of the building.

¶ 16. The interpretation of the safe place statute is a question of law that we review *de novo*. *Barry*, 2001 WI 101 at ¶ 17, 245 Wis. 2d at 568, 630 N.W.2d at 521. "Safe place cases are highly fact-specific and arise under a multitude of circumstances that make it difficult to craft a precise test for determining whether a hazardous property condition is 'structural' or 'associated with the structure.' " *Id.*, 2001 WI 101 at ¶ 24, 245 Wis. 2d at 572, 630 N.W.2d at 523. In this case, both sides substantially rely upon *Barry v. Employers Mutual Casualty Co.* to support their claims.

¶ 17. In *Barry*, Fred Barry filed a lawsuit against the Ameritech Corporation, the owner of a place of employment, after he fell on stairs in an Ameritech building. *Id.*, 2001 WI 101 at ¶ 7, 245 Wis. 2d at 565–566, 630 N.W.2d at 520. The stairway, as it was constructed originally, was fully carpeted. *Id.*, 2001 WI 101 at ¶ 4, 245 Wis. 2d at 565, 630 N.W.2d at 519. When the carpet began to come loose, Ameritech installed vinyl strips, called nosings, on the front of each step. *Id.*, 2001 WI 101 at ¶ 5, 245 Wis. 2d at 565, 630 N.W.2d at 519. An inspection of the stairway revealed that the nosing on the step where Barry fell was loose and was partially detached from the step. *Id.*, 2001 WI 101 at ¶ 8, 245 Wis. 2d at 566, 630 N.W.2d at 520. Barry sued Ameritech under the safe place statute, alleging that the loose nosing was a structural defect and, therefore, that notice was not required. *Id.*, 2001 WI 101 at ¶ 10, 245 Wis. 2d at 566, 630 N.W.2d at 520.

¶ 18. *Barry* concluded that the nosings added to the stairway were an unsafe condition associated with the structure of the building. *Id.*, 2001 WI 101 at ¶ 30, 245 Wis. 2d at 574, 630 N.W.2d at 524. It reasoned that "nosings *added* to the original stairway are not part of

the original structure, but rather, are 'associated with the structure.' " *Ibid.* (emphasis in original; quoted source omitted). *Barry* thus held that the loose stairway nosing was an unsafe condition associated with the structure of the building because "the accident was attributable to the failure to safely repair or maintain the steps rather than a defect in the original structural design or construction of the steps." *Id.*, 2001 WI 101 at ¶ 30, 245 Wis. 2d at 575, 630 N.W.2d at 524.

¶ 19.   In this case, the Rizzutos argue that the loose tile was "a defect in the original structural design or construction of the granite tile facings." They point to the fact that Jackson Street installed mechanical anchors to secure the tiles after Kristin Rizzuto's accident as evidence that the tiles, as they were installed originally, were unsafe. We disagree.

¶ 20.   Like *Barry*, the loose tile in this case was an unsafe condition associated with the structure of the building. The Rizzutos offer no evidence that the granite tiles, as they were installed originally, were unsafe.[4] Thus, they have presented no evidence that the tiles, as installed originally, constituted a "structural defect." Rather, the accident here was the result of an adhesive failure that occurred approximately ten years after the tile was installed originally. As with the loose nosing in *Barry*, the loose tile that hit Kristin Rizzuto was arguably a result of Jackson Street's failure to maintain the elevator in a safe manner. *See id.*, 2001 WI 101 at ¶ 28, 245 Wis. 2d at 574, 630 N.W.2d at 524 ("a condition associated with the structure . . . may develop

---

[4] The Rizzutos argue that the granite tiles were installed in violation of the "Wisconsin Building Code." (Uppercasing omitted.) As we discuss below, however, this claim is waived.

over time"). Although both *Barry* and this case involve a renovation, here, unlike *Barry*, the remodeling was not undertaken to fix a potentially dangerous condition (loose carpeting), but was, rather, part of a general remodeling unconnected with any perceived or potential danger. But this superficial distinction is immaterial. The fact that Jackson Street installed mechanical anchors after Kristin Rizzuto was injured does not prove that the tiles were incorrectly installed originally.[5] *See id.*, 2001 WI 101 at ¶ 30, 245 Wis. 2d at 574–575, 630 N.W.2d at 524 ("To conclude [that nosings added to the original stairway are a structural defect] would be to accept . . . 'circular reasoning,' effectively 'transmorgrify[ing] all maintenance and repair defects into structural defects.'") (second bracket in original; quoted source omitted).

■

¶ 21.   Accordingly, the Rizzutos were required to show that Jackson Street had notice that the tile was loose. *See Transportation Ins. Co. v. Hunzinger Constr. Co.*, 179 Wis. 2d 281, 290, 507 N.W.2d 136, 139 (Ct. App. 1993) (the nonmoving party has the burden to set forth specific facts to establish the elements on which they have the burden of proof at trial). The Rizzutos do not present any evidence that Jackson Street had actual knowledge of the defect. According to the deposition testimony, Jackson Street did not receive any complaints about a loose tile or elevators that "shook." Thus, the Rizzutos must show that Jackson Street had constructive notice.

---

[5] We express no opinion whether evidence of installation of the anchors would be admissible. *See* WIS. STAT. RULE 904.07 (subsequent remedial measures generally not admissible).

> "The general rule is that constructive notice is chargeable only where the hazard has existed for a sufficient length of time to allow the vigilant owner or employer the opportunity to discover and remedy the situation." Ordinarily, constructive notice cannot be found when there is no evidence as to the length of time the condition existed.

*Kaufman v. State St. Ltd. P'ship*, 187 Wis. 2d 54, 59, 522 N.W.2d 249, 251–252 (Ct. App. 1994) (quoted source and citation omitted).

■

¶ 22. We agree with the trial court that the 1998 remodeling was not enough to provide constructive notice. The fact that workers were using the elevators to transport equipment during the 1998 remodeling is simply not enough to provide proof of how long the defect in the tile existed or whether it existed so long that Jackson Street should have discovered it and remedied it. Accordingly, we affirm the trial court's grant of summary judgment.

¶ 23. The Rizzutos also allege that notice is not an element of their case because the granite tiles were installed in violation of the "Wisconsin Building Code." (Uppercasing omitted.) In support of this argument, the Rizzutos rely upon the report of John L. Donnelly, an elevator consultant. Donnelly reviewed the relevant sections of the Wisconsin Administrative Code that were in effect in 1988, the year the tiles were installed. He concluded:

> It is my preliminary opinion with a reasonable degree of engineering certainty that if the granite tiles had been securely fastened and so supported that they would not loosen or become displaced while in ordinary service, that this incident would not have occurred. I base this preliminary opinion upon the review of the

material supplied to me, my research of the applicable codes and standards, as well as my experience within the elevator industry.

¶ 24. The Rizzutos claim that the Donnelly Report supports their view that there was a *per se* violation of the safe place statute, and thus notice is not required. *See Nordeen v. Hammerlund*, 132 Wis. 2d 164, 166, 389 N.W.2d 828, 829 (Ct. App. 1986). Although the Rizzutos attached the Donnelly Report to their witness list, and alluded to the negligence *per se* argument in their brief opposing Jackson Street's motion for summary judgment, they only submitted the Donnelly Report to the trial court in connection with the summary judgment motion in their response to the reply brief submitted by Jackson Street and Cincinnati Insurance. The Rizzutos never developed before the trial court their contention that Jackson Street was guilty of negligence *per se,* and, accordingly, the trial court was unable to assess it without, essentially, first making their argument for them. We do not expect trial courts to decide issues that are not sufficiently developed. *Barakat v. Department of Health & Soc. Servs.*, 191 Wis. 2d 769, 786, 530 N.W.2d 392, 398 (Ct. App. 1995) (we do not review arguments that are "amorphous and insufficiently developed"). As noted in *State v. Rogers*, 196 Wis. 2d 817, 827, 539 N.W.2d 897, 901 (Ct. App. 1995), "[w]e will not . . . blindside trial courts with reversals based on theories which did not originate in their forum." *See also Wirth*, 93 Wis. 2d at 443–444, 287 N.W.2d at 145 (generally, an appellate court will not review an issue raised for the first time on appeal).

*By the Court.*—Order affirmed.