Patricia Rosario, Plaintiff-Appellant,

LaMacchia Enterprises, Inc., Involuntary-Plaintiff,

v.

Acuity and Oliver Adjustment Co., Inc.,
Defendants-Respondents.

Court of Appeals

*No. 2006AP2421. Submitted on briefs May 1, 2007.
—Decided July 10, 2007.*

2007 WI App 194

(Also reported in 738 N.W.2d 608.)

On behalf of the plaintiff-appellant, the cause was submitted on the briefs of *Robert A. Levine* and *Nicholas E. Petty* of *Law Offices of Robert A. Levine*, of Milwaukee.

On behalf of the defendants-respondents, the cause was submitted on the brief of *Thomas J. Binder* and *Christine M. Rice* of *Simpson & Deardorff, S.C.*, of Milwaukee.

Before Wedemeyer, P.J., Fine and Curley, JJ.

¶ 1. WEDEMEYER, P.J. Patricia Rosario appeals from a summary judgment order dismissing her action against Oliver Adjustment Company (Oliver) and its insurer, Acuity, for negligence and safe place violations. Because Rosario's claim for injuries due to a fall was

based upon a structural defect, subject to the barring provision of the statute of repose, and not caused by an unsafe condition associated with a structure, we affirm.

## I. BACKGROUND

¶ 2. On June 16, 2004, Rosario visited an office building located at 4763 South Packard Avenue in Cudahy, Wisconsin. It was occupied and owned by Oliver, a company engaged in the collection business. The purpose of her visit was to transact some personal business. As she was leaving the premises and in the process of stepping out onto the sidewalk, while negotiating a step three inches in height, she fell and broke her foot. It is undisputed that the design of the step violated the Wisconsin Building Code, § 1003.2.7, which requires a sloped surface instead of a step for elevation changes less than twelve inches. At the time of the accident, there were no signs or makers posted indicating the presence of the step.

¶ 3. Rosario claimed that Oliver was negligent in failing to properly maintain the premises prior to her sustaining her injuries and to warn frequenters and visitors of the condition of the premises. Alternatively, she alleged a violation of the safe place statute, Wis. Stat. § 101.11 (2005–06),[1] for failure to construct, repair, and maintain its place of employment so that the premises would be safe. She further alleged that Oliver "knew or should have known of the unsafe condition of the area for a substantial period of time prior to said injuries and had ample time to remedy it."

¶ 4. After discovery had been completed, Oliver moved for summary judgment based upon *Mair v.*

---

[1] All references to the Wisconsin Statutes are to the 2005–06 version unless otherwise noted.

*Trollhaugen Ski Resort*, 2006 WI 61, ¶ 2, 291 Wis. 2d 132, 715 N.W.2d 598, which held WIS. STAT. § 893.89 bars safe place claims resulting from injuries caused by structural defects ten years after a structure is substantially completed. Here, it is undisputed that the small-step structural defect was completed during the construction of the building forty years ago, far beyond the ten-year exposure period of the statute of repose.

¶ 5. In opposing the summary judgment motion, Rosario claimed that the building step was an "unsafe condition associated with the structure, not a structural defect." She argued she does not rely on the inherent design of the step to constitute a defect. Instead, she proffers that the step was maintained in an unsafe manner because Oliver failed to mark the step. This condition left her without "proper visual clues" by which she could judge the height of the step and thus prevent the fall.

¶ 6. The trial court granted summary judgment. It ruled that Rosario's claim is not one based on an unsafe condition. Rather, the essence of her action is that the short step made it unsafe. It further ruled that even if an unsafe condition existed, such a phenomena required notice to the owner and "none has been shown on the record . . . ." Rosario now appeals.

## II. STANDARD OF REVIEW AND APPLICABLE LAW

*A. Summary Judgment.*

■

¶ 7. We review summary judgments independently, employing the same methodology as the trial court. *Green Spring Farms v. Kersten*, 136 Wis. 2d 304, 315, 401 N.W.2d 816 (1987). We shall affirm the trial

court's decision granting summary judgment if the record demonstrates that there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. WIS. STAT. § 802.08(2). Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Id.*

B. *Interpretation of Statutes.*

¶ 8.   This case also involves the interpretation of the statute of repose and the safe place statute. We review questions of statutory interpretation independently. *State v. Sveum*, 2002 WI App 105, ¶ 5, 254 Wis. 2d 868, 648 N.W.2d 496.

C. *Safe Place Statute.*

¶ 9.   Under WIS. STAT. § 101.11, every employer and owner of a public building is to provide a place that is safe for frequenters of that place, and every owner of a public building "shall so construct, repair or maintain such" public building as to render it safe. The law, however, "does not require an . . . owner of a public building to be insurers of frequenters of the premises." *Megal v. Green Bay Area Visitor & Convention Bureau, Inc.*, 2004 WI 98, ¶ 9, 274 Wis. 2d 162, 682 N.W.2d 857.

¶ 10.   The term "safe" is relative in nature. "Safe" does not mean completely free of any hazards. What constitutes "a safe place depends upon the facts and

conditions present, and the use to which the place [is] likely to be put." *Gross v. Denow*, 61 Wis. 2d 40, 47, 212 N.W.2d 2 (1973) (quotations omitted). Just because a place could be more safe, it does not necessarily follow that an owner has breached the duty of care established by WIS. STAT. § 101.11(1).

¶ 11.    "The owner of a public building is liable for:   (1) structural defects; and (2) unsafe conditions associated with the structure of the building." *Rizzuto v. Cincinnati Ins. Co.*, 2003 WI App 59, ¶ 11, 261 Wis. 2d 581, 659 N.W.2d 476. "The classification of the hazardous property condition is often crucial in safe place cases because of the differing notice requirements for each." *Barry v. Employers Mut. Cas. Co.*, 2001 WI 101, ¶ 22, 245 Wis. 2d 560, 630 N.W.2d 517. Classifying an unsafe condition as a "structural defect" or as an "unsafe condition associated with the structure" requires the interpretation and application of the safe place statute to the facts of the case, thereby presenting a question of law that we review independently. *Id.*, ¶ 17. An unsafe condition associated with the structure arises when an originally safe structure is not properly repaired or maintained. *Id.*, ¶¶ 25, 27. "[D]efects in the lighting or paint color or a lack of warning signs could be considered unsafe conditions associated with the structure." *Mair*, 291 Wis. 2d 132, ¶ 12.

¶ 12.    A property owner must have actual or constructive notice of the defect to be liable for an unsafe condition associated with the structure of the building. *Pettric v. Gridley Dairy Co.*, 202 Wis. 289, 293, 232 N.W. 595 (1930).

> The general rule is that constructive notice is charge-
> able only where the hazard has existed for a sufficient
> length of time to allow the vigilant owner ... the
> opportunity to discover and remedy the situation. The
> length of time viewed as sufficient varies according to
> the nature of the business, the nature of the defect, and
> the public policy involved.

*May v. Skelley Oil Co.*, 83 Wis. 2d 30, 36–37, 264 N.W.2d
574 (1978).

### III. Discussion

¶ 13.   Rosario contends that the trial court erred
in granting summary judgment for two basic reasons.
First, the trial court erroneously analyzed her claim as
one based upon a structural defect, and second, improp-
erly dismissed her claim which was based upon the
existence of an unsafe condition associated with a
structure. The two bases proposed by Rosario to reverse
the trial court's decision are interrelated, but for the
purposes of clarity, we shall examine them separately.

¶ 14.   Rosario first contends that the trial court
erred when it concluded that her claim for injury was
fundamentally based upon a structural defect and con-
sequently barred by the ten-year statute of repose of Wis.
Stat. § 893.89. Rather, she asserts her injuries resulted
from Oliver's "failure to warn" of the small step outside of
the building which constituted "an unsafe condition
associated with the structure." We are not persuaded.

¶ 15.   As noted above, an owner of a public build-
ing can be liable for two property conditions:
(1) structural defects, or (2) unsafe conditions associated
with the structure of the building. *Rizzuto*, 261 Wis. 2d
581, ¶ 11. The latter classification arises from " 'the
failure to keep an *originally safe* structure in proper

723

repair or properly maintained.' " *Mair*, 291 Wis. 2d 132, ¶ 23 (emphasis added; citation omited). The classification is crucial because of the different notice requirements for each category. *Id.*, ¶¶ 22–23.

¶ 16.   A structural defect has been defined as " 'a hazardous condition inherent in the structure by reason of its design or construction." ' *Id.*, ¶ 22. (citation omited). A structural defect arises from materials used in the construction, improper layout of the structure or improper construction. *Id.* On the one hand, a property owner is liable for injuries caused by a structural defect regardless of whether it had notice of the defect. *Id.* On the other hand, a property owner is liable for any unsafe condition only when it had actual or constructive notice of the condition. *Id.*, ¶ 23.

¶ 17.   In *Barry*, our supreme court further amplified the distinction between the statutory duty to safely construct and the statutory duty to repair or maintain. A breach of the statutory duty to safely construct creates a structural defect; whereas the breach of the statutory duty to repair or maintain creates an unsafe condition associated with the structure. *Barry*, 245 Wis. 2d 560, ¶¶ 25–26, 28.

¶ 18.   In *Mair*, the plaintiff claimed injury from a fall resulting from an unmarked recessed floor drain in a building bathroom. 291 Wis. 2d 132, ¶ 11. The plaintiff alleged that nothing had been done to highlight the hazard. *Id.* Plaintiff's expert opined that the drain design violated industry standards and "to a reasonable degree of professional certainty that the design, location, and construction of the recessed floor drain caused or contributed to" plaintiff's injury. *Id.*, ¶ 9. The court held that plaintiff's claim related to a structural defect

rather than an unsafe condition associated with the property. *Id.*, ¶ 2. The court stated:

> [T]here is no allegation that Trollhaugen allowed the bathroom floor to fall into disrepair or did not maintain it in a safe manner . . . [t]here is no dispute that the floor and drain were in their original condition since the initial construction . . . approximately 30 years ago, and Mair's allegations are based on an alleged failure to safely construct the bathroom.
>
> Mair argues that the failure to modify the drain to comply with modern safety standards creates an unsafe condition associated with the structure. However, as noted, an unsafe condition associated with the structure involves a structure falling out of repair or not being maintained in a safe manner. That is, the employer or owner essentially breaches his or her statutory duty to repair or maintain the property. *Barry*, 245 Wis. 2d 560, ¶ 25. Because the design and placement of the floor drain and the condition of the surrounding floor have nothing to do with a failure to repair or maintain the property, they can be classified only as structural defects rather than unsafe conditions associated with the structure.

*Mair*, 291 Wis. 2d 32, ¶¶ 24–25. To support her claim, Rosario's expert, like the expert in *Mair*, rendered an opinion that the step's design violated the Wisconsin Building Code, and, to a reasonable degree of engineering certainty, was unreasonably dangerous and defective; and such defect caused the fall and subsequent injury to Rosario.

¶ 19.   Rosario's claim essentially stands on "all fours" with the resolution of Mair's claim. It most assuredly relates to the failure to design and construct a safe part of the Oliver property. Because the undis-

725

puted facts clearly demonstrate that Rosario's injuries were caused by the defective structural design of the front step, her claim is subject to the statute of repose and any consequences of its application.

## A. *Statute of Repose.*

¶ 20.  In *Mair*, our supreme court also examined the application of the Wisconsin Statute of Repose, Wis. Stat. § 893.89, to a safe place statutory claim. Trollhaugen, the defendant, moved for summary judgment arguing that Mair's claim was barred by the builder's statute of repose. In relevant part, Wis. Stat. § 893.89 reads:

> **(1)** In this section, "exposure period" means the 10 years immediately following the date of substantial completion of the improvement to real property.
>
> **(2)** Except as provided in sub. (3), no cause of action may accrue and no action may be commenced, including an action for contribution or indemnity, against the owner or occupier of the property or against any person involved in the improvement to real property after the end of the exposure period, to recover damages for any injury to property, for any injury to the person, or for wrongful death, arising out of any deficiency or defect in the design, land surveying, planning, supervision or observation of construction of, the construction of, or the furnishing of materials for, the improvement to real property.

¶ 21.  Mair argued that "the safe place statute imposed an ongoing duty to modify or make an existing structure safe if it was unsafe at the time of construction." *Mair*, 291 Wis. 2d 132, ¶ 7. The court however held, in no uncertain terms, that "Wis. Stat. § 893.89 bars safe place claims resulting from injuries caused by

structural defects beginning ten years after a structure is substantially completed." *Id.*, ¶ 18.

¶ 22. Because it is uncontroverted that the defectively designed and constructed front step to Oliver's building has been in an unchanged condition since 1965, the ten-year exposure period of the statute of repose has expired. *A pari* Rosario's claim is barred by WIS. STAT. § 893.89.

## B. *Unsafe Condition Associated with the Structure.*

¶ 23. Alternatively, Rosario claims there was a lack of markings or signs warning of the irregular step that caused her to fall. This situation, she argued, constituted an unsafe condition associated with the structure and constituted a breach of a duty to properly maintain or repair an unsafe condition associated with the structure. Her argument continued that although Oliver had no actual notice, he had constructive notice because the condition of the lack of warning has existed unchanged for forty years, which is long enough for Oliver to have noticed and corrected the unsafe condition. Rosario's view of the record and applicable law is mistaken.

¶ 24. With respect to the time interval sufficient to satisfy the requirement for constructive notice to exist, the *May* decision cited above teaches us: "The length of time viewed as sufficient varies according to the nature of the business, the nature of the defect, and the public policy involved." *Id.*, 83 Wis. 2d at 37. Stated otherwise, the length of time element is contextual in nature oriented to the facts and circumstances of each individual case.

¶ 25. The record reveals that Oliver purchased the premises in 1999. The accident occurred on June 16, 2004, approximately five years after Oliver became the owner, a period of time much shorter than that contended by Rosario. The defectively designed step was constructed in 1965. There is no dispute, as evidenced by the affidavit of the City of Cudahy Assessor, that no change to the exterior step had been made since 1965 when it was originally constructed. Pictures contained in the Assessor's file in the record dating back to 1966 reflect no change in the appearance of the step compared to its state at the time of the accident. The owner of Oliver, Frederick Quandt, was not aware of any modifications to the front step of the building since he purchased the building in 1999. There is no evidence that any building code violations were ever filed relating to the step that would have placed Oliver on notice of the existence of an unsafe condition. Nor is it claimed that Oliver allowed the condition of the step to deteriorate or failed to maintain it in a safe manner. Finally, Quandt confirmed that there had been no accidents involving the front step of the building since he purchased it in 1999.

¶ 26. Rosario, to support her claim that the failure to warn created an unsafe condition associated with the structure, points to her expert witness's report wherein he states, "Ms. Rosario's lack of visual clues from the three inch step and her movement from the darker interior to the sunny exterior combined to mask the vertical transition." The record, however, reveals Rosario acknowledged she walked up the step when entering the building. When leaving, nonetheless, she looked straight ahead, not thinking about the step she had earlier negotiated when entering the Oliver office. In effect, Rosario in the process of walking from a

728

comparatively darker interior into a lighter exterior in a very short space, missed the vertical transition to the sidewalk.

¶ 27. It is clear that Rosario's expert's statement is not expressed to the same degree of certitude normally expressed in an expert's opinion and totally lacks any mention of causality. The contrast in the sun's brightness at a given moment to the interior lighting condition of the office is an antecedent circumstance of her missing the step. There is no basis to attribute causation to any lack of warning. In fact, any expression of causality is conspicuously wanting when compared to the expression of causality attributed to the design or construction defect expressed in the last sentence of the same report. This differential is significant.

¶ 28. In this court's published decision in *Mair* at 2005 WI App 116, 283 Wis. 2d 722, 699 N.W.2d 624, affirmed by the supreme court in *Mair*, 291 Wis. 2d 132, we held that a resort owner could not be liable under the safe place statute for an unsafe condition associated with the structure where a woman stepped on a recessed floor drain whose level violated industry standards when no one had fallen as a result of the failure to warn for twenty-five years prior to the accident. We further held that there was no evidence presented that the resort owner "knew, or in the exercise of reasonable care should have known, that the condition was unsafe." *Mair*, 283 Wis. 2d 722, ¶ 14.

¶ 29. Here, in granting Oliver summary judgment, the trial court based its decision in part on the following statements:

> An unsafe condition associated with the structure arises from the failure to keep an originally safe structure in proper repair or properly maintained. It's plain

from the record before me that plaintiff's claim here logically and fairly analyzed is not a claim based on an unsafe condition.

The plaintiff's claim is not that based on a failure to keep an originally safe structure in proper repair or properly maintained . . .[t]he essence of the plaintiff's action is that the short step running along the length of the premises made it unsafe. *Mair*, like Ms. Rosario, incorporated allegations that the failure to mark the premises such as to alert users of the safety issue created an unsafe condition.

The Supreme Court rejected these claims stating: "Although defects in the lighting or paint color or a lack of warning signs could be considered unsafe conditions associated with the structure, Mair did not present evidence sufficient to escape summary judgment that such a condition contributed to her fall."

The Supreme Court reached this conclusion despite noting that Mair's expert had testified that the color of the room may have been a contributing factor in causing Mair's fall. The opinion was not given to a reasonable degree of professional certainty.

Ms. Rosario endeavors to elude the bar imposed by the Statute of Repose by arguing that these circumstances are an unsafe condition because defendant should have warned of the step. This appears to me to be intrinsically circular logic. To accept it would be to undo the Statute of Repose. It would be tantamount to saying that an unsafe condition is created by a failure to warn of a design defect barred by the Statute of Repose.

In conclusion, the trial court stated:

Finally, I note that an unsafe condition requires notice; and none has been shown on the record before me. So from the record before me I'm convinced that plaintiff's claims are based on structural defect and that it is barred by the Statute of Repose.

730

¶ 30.   We could not agree more. At the time of this accident Oliver had owned the building for only five years. The business on the premises was that of a collection agency. It is undisputed that the front step was the product of an original defective design and construction. Unknown to Oliver, the original and continuing condition of the structure was thus not safe, but was actually unsafe, a significant distinction. Because there has not been a scintilla of evidence presented that Oliver improperly repaired or maintained its structure, there has not been a sufficient showing to constitute constructive notice of an unsafe condition. Finally, because the original defectively designed step was unsafe, Rosario's claim that Oliver is liable for her injuries due to an unsafe condition associated with a structure fails.[2]

*By the Court.*—Order affirmed.

[2] Rosario raises a third issue:   to-wit, "Using the Statute of Repose to bar claims arising from an unsafe condition associated with a structure that would not exist but for a structural defect would undermine the safe place statute and overly broaden the Statute of Repose to encompass more than ever intended." Because we have rejected Rosario's claim of trial court error based on an unsafe condition associated with a structure for reasons other than the application of the statute of repose, we eschew consideration of this issue.