Valentine Garrido CRISANTO,
Plaintiff-Appellant,†

WAUSAU BUSINESS INSURANCE COMPANY,
Involuntary-Plaintiff,

v.

HERITAGE RELOCATION SERVICES, INC.,
Defendant-Respondent,

v.

COAKLEY BROTHERS CO. and
American Guarantee and Liability Ins. Co.,
Third-Party Defendants-Respondents.

Court of Appeals

*No. 2013AP1369. Submitted on briefs January 7, 2014.
—Decided June 10, 2014.*

2014 WI App 75

(Also reported in 851 N.W.2d 771.)

† Petition for Review filed.

403

On behalf of the plaintiff-appellant, the cause was submitted on the briefs of *Victor C. Harding* of *Warshafsky, Rotter, Tarnoff & Bloch, S.C.*, Milwaukee.

On behalf of the defendant-respondent, the cause was submitted on the brief of *Paul J. Pytlik* and *Evan Tenebruso* of *Hills Legal Group, LTD.*, Waukesha.

Before Curley, P.J., Fine and Brennan, JJ.

¶ 1. BRENNAN, J. Valentine Garrido-Crisanto appeals from a summary judgment order, dismissing his negligence and safe-place statute claims, *see* WIS. STAT. § 101.11 (2011–12),[1] against Heritage Relocation Services, Inc. Garrido-Crisanto's claims stem from an injury incurred when his foot was crushed while riding on a freight elevator without a safety gate in a building owned by Heritage. The circuit court dismissed all of Garrido-Crisanto's claims based upon the lack of a safety gate on the elevator, on the grounds that those claims were premised on a structural defect and were therefore barred by the ten-year statute of repose set forth in WIS. STAT. § 893.89. We affirm.

## BACKGROUND

¶ 2. On September 16, 2010, Garrido-Crisanto was working for QPS Companies, Inc., a temporary-staffing agency, that placed him to work at Coakley Brothers Company. Garrido-Crisanto had been charged with moving carts full of equipment from the first floor to the third floor of Coakley's storage building, using one of four elevators in the building. There was no safety gate to protect people traveling inside the elevator car. As Garrido-Crisanto was moving two loaded carts from the first floor to the third floor, his foot

---

[1] All references to the Wisconsin Statutes are to the 2011–12 version unless otherwise noted.

extended over the front edge of the elevator by several inches. As the elevator passed the second floor, his foot sustained severe injuries.

¶ 3. The parties do not dispute that the building where Garrido-Crisanto was injured was constructed in 1909, that the elevator was installed sometime in the early to mid 1940s, and that the elevator has been in place, unchanged, for decades. In 1998, Heritage purchased the building that houses the elevator. Following its purchase of the building, Heritage entered into a long-term lease arrangement with Coakley.

¶ 4. On December 23, 2011, Garrido-Crisanto filed an action against Heritage, alleging negligence and safe-place statute violations. Heritage answered the complaint, generally denying all allegations.[2]

¶ 5. On December 12, 2012, all of the parties executed a stipulation and order acknowledging Wausau Business Insurance Company's subrogated worker's compensation claim based upon benefits Wausau paid to Garrido-Crisanto on behalf of QPS, the temporary-staffing agency. The parties agreed that Wausau had a statutory lien right, pursuant to WIS. STAT. § 102.29, based upon Wausau's payments.

¶ 6. On February 13, 2013, Heritage filed a motion for summary judgment. The motion asserted that Heritage was the owner of a permanent improvement to real estate that had occurred decades earlier and remained unchanged, and that any claims for personal

---

[2] Originally, Garrido-Crisanto filed suit against Katie-Bug, Inc. Subsequently, Katie-Bug changed its name to Heritage Relocation Services, Inc. On February 23, 2012, the parties stipulated to substituting Heritage in the caption for Katie-Bug, with all references in the original complaint directed to Heritage rather than Katie-Bug.

injury arising out of any defect in the improvement were barred by the ten-year statute of repose set forth in Wis. Stat. § 893.89.

¶ 7. Garrido-Crisanto opposed Heritage's motion, asserting that: (1) Heritage waived its right to raise its statute-of-repose defense when it failed to raise the issue as an affirmative defense; (2) the time for filing dispositive motions had passed under three iterations of the scheduling order; (3) an owner who knows of an unsafe condition loses repose protection under Wis. Stat. § 893.89(4)(c) for failure to inspect and repair the premises; and (4) Wausau's subrogation claim makes this an action filed pursuant to Wis. Stat. ch. 102, and § 893.89(6) exempts ch. 102 actions from the statute of repose.

¶ 8. In support of his opposition to summary judgment, Garrido-Crisanto submitted an expert report from Robert A. Bertz. Bertz opined that "[t]he absence of a car gate, the general condition of the car enclosure[,] . . . damaged landing sills, . . . [and] poor maintenance . . . [were the] proximate cause[s]" of Garrido-Crisanto's injury. Bertz further stated that Heritage "had actual or constructive knowledge of the substantial risk of grave injury that operating a freight elevator by untrained personnel without a car gate presents."

¶ 9. The circuit court dismissed Garrido-Crisanto's claims against Heritage, "to the extent those claims [were] based on the lack of a safety gate on the elevator," concluding that those claims were barred by the statute of repose for structural defects. However, the circuit court noted that Bertz's expert report suggested that Garrido-Crisanto may have other, undeveloped claims against Heritage for negligence in maintaining and inspecting the elevator that would be exempt from the statute of repose pursuant to Wis. Stat. § 893.89(4)(c).

¶ 10. Subsequently, the parties prepared a stipulation and order, entered by the circuit court, dismissing *with prejudice* Garrido-Crisanto's "negligence and safe place claims against Heritage, based on the lack of a safety gate," and dismissing *without prejudice* Garrido-Crisanto's claims based upon "other potential safety issues" because Garrido-Crisanto was "not in a position at [that] time to advance claims based on other safety issues." The stipulation created a final order from which Garrido-Crisanto could appeal the circuit court's conclusion that its claims based upon the lack of a safety gate were barred by WIS. STAT. § 893.89. As such, Garrido-Crisanto filed his notice of appeal from the circuit court's summary judgment order.

## DISCUSSION

¶ 11. Garrido-Crisanto asks us to reverse the circuit court's summary judgment order, namely, the circuit court's conclusion that Garrido-Crisanto's claims based upon the elevator's lack of a safety gate are barred by WIS. STAT. § 893.89. He raises three issues for our review: (1) whether the ten-year statute of repose applies to subsequent owners not involved in the actual improvement to real estate; (2) whether § 893.89(4)(c) of the statute of repose contains an exemption for claims alleging structural defects that are known to the property owner that the owner does not attempt to fix; and (3) whether Garrido-Crisanto asserts a worker's compensation claim under WIS. STAT. ch. 102 that is exempt from the ten-year statute of repose pursuant to § 893.89(6).[3] For the reasons which follow, we affirm.

[3] To the extent that Garrido-Crisanto raised issues before the circuit court that he does not raise before this court, we deem those issues abandoned. *See A.O. Smith Corp. v. Allstate Ins. Cos.*, 222 Wis. 2d 475, 491, 588 N.W.2d 285 (Ct. App. 1998).

¶ 12. We independently review a grant of summary judgment, using the same methodology as the circuit court. *Hardy v. Hoefferle*, 2007 WI App 264, ¶ 6, 306 Wis. 2d 513, 743 N.W.2d 843. Summary judgment is appropriate where there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Wis. Stat. § 802.08(2). Here, the facts are undisputed, leaving only issues of law for our review.

¶ 13. To determine whether Garrido-Crisanto's claims fall within the statute of repose for structural defects, we must interpret the statute itself. Statutory interpretation presents a question of law that we review independent of the circuit court. *Estate of Lamers v. American Hardware Mut. Ins. Co.*, 2008 WI App 165, ¶ 7, 314 Wis. 2d 731, 761 N.W.2d 38. "The aim of statutory construction is to ascertain the intent of the legislature, and our first resort is to the language of the statute itself." *Id.*, ¶ 8. If the meaning of the words in the statute is plain, we simply apply that language to the facts before us. *Id.* However, if a statute is ambiguous, we turn to the scope, history, context, and purpose of the statute. *See State ex rel. Kalal v. Circuit Ct. for Dane Cnty.*, 2004 WI 58, ¶ 48, 271 Wis. 2d 633, 681 N.W.2d 110.

I. **Case law dictates that the ten-year statute of repose set forth in Wis. Stat. § 893.89 applies to a claim against a subsequent owner even if the subsequent owner was not involved in the actual improvement to the property.**

¶ 14. Garrido-Crisanto argues that the ten-year statute of repose set forth in Wis. Stat. § 893.89 does

not apply in this case because he believes that the statute does not apply to claims against subsequent owners who were not involved in the actual improvement to the property. Heritage complains that Garrido-Crisanto raises this issue for the first time on appeal and asks that we refuse to address the issue on that basis. However, while we often do decline to address issues raised for the first time on appeal, we choose to address this issue in the interest of fairness because the question is purely legal, the facts are undisputed, our review is *de novo,* and the issue has been fully and competently briefed by the parties. *See Bohrer v. City of Milwaukee,* 2001 WI App 237, ¶ 7 n.6, 248 Wis. 2d 319, 635 N.W.2d 816. Having considered the question, we conclude that the statute of repose *does* apply to claims against subsequent owners, like Heritage, even if the subsequent owners were not involved in the improvement to the property.

¶ 15. Wisconsin Stat. § 893.89 "is a statute of repose that sets forth the time period during which an action for injury resulting from improvements to real property must be brought." *Kohn v. Darlington Cmty. Sch.,* 2005 WI 99, ¶ 13, 283 Wis. 2d 1, 698 N.W.2d 794. The statute states, in relevant part:

> (1) In this section, "exposure period" means the 10 years immediately following the date of substantial completion of the improvement to real property.
>
> (2) Except as provided in sub. (3), no cause of action may accrue and no action may be commenced, including an action for contribution or indemnity, against the owner or occupier of the property or against any person involved in the improvement to real property after the end of the exposure period, to recover damages for any injury to property, for any injury to the person, or for wrongful death, arising out of any deficiency or defect

in the design, land surveying, planning, supervision or observation of construction of, the construction of, or the furnishing of materials for, the improvement to real property . . . .[]

*See* § 893.89(1)-(2). The parties here all agree that the freight elevator is an "improvement to real property." *See* § 893.89(2); *see also Kohn*, 283 Wis. 2d 1, ¶¶ 13–14.

¶ 16. Heritage and Garrido-Crisanto argue over whether this phrase—"no action may be commenced . . . against the owner or occupier of the property *or* against any person involved in the improvement to real property"—includes subsequent owners not involved in the actual improvement. *See* Wis. Stat. § 893.89(2) (emphasis added). Heritage contends that the use of the word "or" means that the statute protects both "the owner or occupier of the property" *and* "any person involved in the improvement," thereby applying the repose period to claims against subsequent owners. *See id.* Garrido-Crisanto contends that, because there is no comma before the word "or," the legislature intended the phrase "involved in the improvement to real property" to modify both "owner or occupier" and "any person," thereby omitting subsequent owners not involved in the improvement from the statute of repose. *See id.* We need not dive into the depths of the parties' arguments, however, because we effectively already decided this issue in *Rosario v. Acuity & Oliver Adjustment Co.*, 2007 WI App 194, 304 Wis. 2d 713, 738 N.W.2d 608.

¶ 17. In *Rosario*, Patricia Rosario visited an office building owned and operated by Oliver Adjustment Company. *Id.*, ¶¶ 1–2. "As [Rosario] was leaving the premises and in the process of stepping out onto the sidewalk, while negotiating a step three inches in height, she fell and broke her foot." *Id.*, ¶ 2. It was undisputed by the parties that the small step was installed during the

construction of the building forty years prior to Rosario's fall and prior to Oliver's purchase of the building. *Id.*, ¶¶ 4, 25. In that respect, the step design, like the gateless elevator in this case, was an alleged structural design defect that long preceded the current owner's ownership of the building. Rosario filed suit, alleging negligence and safe-place claim statute violations against Oliver. *Id.*, ¶ 3. We applied the statute of repose to Oliver, a subsequent owner of the property who was not involved in the construction of the step. *See id.*, ¶¶ 1, 4, 25. We are bound by our prior ruling. *See Cook v. Cook*, 208 Wis. 2d 166, 189, 560 N.W.2d 246 (1997).

¶ 18. Garrido-Crisanto argues, without authority, that we are not bound by *Rosario* because *Rosario* did not explicitly address whether Wis. Stat. § 893.89's statute of repose applies to subsequent owners who were not involved in the improvement to the property, but instead, merely applied the statute to the subsequent owner in that case. While it is true that our decision did not specifically discuss the effect of subsequent ownership on the application of the statute of repose, it did note that Oliver bought the building in 1999 and that the step was constructed in 1965, and we did hold that the step design was a structural defect, which entitled the current building owner to the protection of the statute of repose. *See Rosario*, 304 Wis. 2d 713, ¶¶ 1, 25. Similarly, Heritage is entitled to protection under the statute of repose for what it acknowledges is a structural defect, that is, the gateless elevator.[4]

---

[4] In support of his argument that Wis. Stat. § 893.89 does not apply to claims against subsequent owners not involved in the actual improvement to the property, Garrido-Crisanto relies heavily on the history of the statute as it is discussed in *Kohn v. Darlington Cmty. Sch.*, 2005 WI 99, 283 Wis. 2d 1, 698 N.W.2d 794, particularly *Kohn*'s pronouncement that the purpose of

414

## II. Wisconsin Stat. § 893.89(4)(c) does not exempt from the statute of repose Garrido-Crisanto's claims based on a structural defect, that is, the elevator's lack of a safety gate, even if Heritage knew that the elevator was unsafe.

¶ 19. Garrido-Crisanto next argues that even if the statute of repose in WIS. STAT. § 893.89 protects a subsequent owner from a safe-place statute violation based on a structural defect of which the owner was unaware, under general negligence principles, it does not protect the subsequent owner from those structural defects of which he or she had actual or constructive notice. He cites to no authority for this proposition but argues that applying the statute of repose to claims for a structural defect of which the subsequent owner has notice would undermine traditional tort notions of negligence. Again, because we are bound by our prior precedent, we reject Garrido-Crisanto's invitation to expand the law.

¶ 20. Under the safe-place statute, "an owner is liable for two types of conditions that cause injury: (1) structural defects; and (2) unsafe conditions associated with the structure of the building." *Mair v. Trollhaugen Ski Resort ("Mair I")*, 2005 WI App 116, ¶ 12, 283 Wis. 2d 722, 699 N.W.2d 624, *aff'd* 2006 WI 61, 291 Wis. 2d 132, 715 N.W.2d 598. "A structural defect 'arises from a breach of the statutory duty to construct a safe building.' " *Id.* (citation omitted). An owner is liable for a

§ 893.89 is to provide protection for those involved in the improvement of real property. *See Kohn*, 283 Wis. 2d 1, ¶ 66. To the extent that *Kohn* might be persuasive, we note that it was decided prior to *Rosario* and does not involve an action against a subsequent owner. *See id.*, ¶¶ 2–5.

415

structural defect " 'regardless of whether he or she knew or should have known that the defect existed.' " *Id.* (citation omitted). "An unsafe condition associated with the structure arises when an originally safe structure is not properly repaired or maintained." *Rosario*, 304 Wis. 2d 713, ¶ 11. "A property owner must have actual or constructive notice of the defect to be liable for an unsafe condition associated with the structure of the building." *Id.*, ¶ 12.

¶ 21. Our supreme court held in *Mair v. Trollhaugen Ski Resort*, 2006 WI 61, 291 Wis. 2d 132, 715 N.W.2d 598 ("*Mair II*"), that Wis. Stat. "§ 893.89 bars safe place claims resulting from injuries caused by structural defects, but not by unsafe conditions associated with the structure." *Mair II*, 291 Wis. 2d 132, ¶ 29. In so concluding, the court relied on § 893.89(4)(c), which exempts from the statute of repose " '[a]n owner or occupier of real property for damages resulting from negligence in the maintenance, operation or inspection of an improvement to real property.' " *See Mair II*, 291 Wis. 2d 133, ¶ 29 (citing § 893.89(4)(c)) (emphasis omitted; brackets in *Mair II*). The court explained that "[u]nder the safe place statute, a failure to 'maintain' correlates to an unsafe condition associated with the structure, and thus allegations of such defects do not fall under the purview of the builder's statute of repose." *Mair II*, 291 Wis. 2d 132, ¶ 29.

¶ 22. Garrido-Crisanto asks us to expand the class of claims exempt from the statute of repose under Wis. Stat. § 893.89(4)(c) to include not only unsafe conditions, but also structural defects of which an owner has notice.[5] He attempts to distinguish prior case law by

[5] Garrido-Crisanto's arguments regarding Wis. Stat. § 893.89 before this court are subtly different than those presented in his brief to the circuit court. Before the circuit court, Garrido-Crisanto argued that the absence of a safety gate on the

arguing that no court has yet been asked to decide whether a structural defect claim is entitled to protection where the owner had notice. We decline to do so because, as our supreme court held in *Hocking v. City of Dodgeville*, 2010 WI 59, 326 Wis. 2d 155, 785 N.W.2d 398, such a conclusion would effectively swallow the rule.

¶ 23. In *Hocking*, Glen and Louann Hocking purchased a home adjacent to a largely undeveloped plot of land covered with trees. *Id.*, ¶¶ 5–6. Eleven years after the Hockings purchased their home, the land adjacent to their property was purchased and developed into a subdivision. *Id.*, ¶ 6. As part of that development, the City of Dodgeville contracted with a professional engineer to design and install streets and sewers. *Id.* Because the terrain was uneven, the engineer brought in large amounts of landfill to level the land, creating a steep slope that ran downhill into the Hockings' property. *Id.*, ¶ 7. Development of the subdivision significantly impacted the physical conditions of the Hockings' property, including causing them flooding problems in their yard and basement, damaging their home, and eroding their land. *Id.*, ¶ 10.

¶ 24. The Hockings filed suit against the City, alleging "that the City was negligent in the design, plotting, approval, and development of a subdivision adjacent to their property and that negligence caused significant water damage to their property." *Id.*, ¶ 1. The

elevator was an unsafe condition and that Heritage "was . . . causally negligent for failing to inspect/repair/replace an unsafe elevator by adding a simple safety gate." Before this court, Garrido-Crisanto appears to have abandoned his argument that the absence of the safety gate created an unsafe condition exempt from repose pursuant to § 893.89(4)(c), and instead appears to concede that the absence of the safety gate is a structural defect.

417

City argued that the statute of repose in WIS. STAT. § 893.89 barred that action because the action was filed more than ten years after the substantial completion of the subdivision. *Hocking*, 326 Wis. 2d 155, ¶ 13. The Hockings argued, among other things, "that the suit could move forward pursuant to § 893.89(4)(c) because the City owned and controlled the subdivision streets and was negligent in maintaining a nuisance." *Hocking*, 326 Wis. 2d 155, ¶ 13. Our supreme court held as follows:

> The text of [WIS. STAT. § 893.89] distinguishes between suits arising from "design" or "planning" defects, which explicitly fall within the statute of repose, and suits arising from negligent maintenance of the property under § 893.89(4)(c). If the improvement causes damage due to poor design, a plaintiff has ten years to assert his or her rights. *Construing [§ 893.89(4)(c)'s] phrase "maintenance, operation or inspection of an improvement to real property" to mean maintenance or operation of a nuisance would create an exception that swallows the rule. This is so because every improvement that is negligently designed could be considered an ongoing nuisance that the owner or operator negligently maintains by failing to correct.*

*Hocking*, 326 Wis. 2d 155, ¶ 47 (footnote omitted; emphasis added). That is exactly what Garrido-Crisanto is asking us to do here.

¶ 25. The circuit court only dismissed Garrido-Crisanto's claims to the extent that they were based on the single fact that the elevator did not have a safety gate. The circuit court specifically ruled that his claims based on negligent maintenance and repair as supported by Bertz's expert report were not protected by the statute of repose. Garrido-Crisanto contends that although the failure to include a safety gate on the elevator

is a design defect, that is, a structural defect that traditionally falls squarely within the statute of repose, the exemption set forth in Wis. Stat. § 893.89(4)(c) should apply because Heritage was negligent "for failing to inspect/repair/replace an unsafe elevator by adding a simple safety gate" and because Heritage knew the elevator was unsafe. However, like in *Hocking*, such a conclusion would create an exception that swallows the rule "because every improvement that is negligently designed could be considered an ongoing nuisance that the owner or operator negligently maintains by failing to correct." *See id.*, 326 Wis. 2d 155, ¶ 47. Consequently, like the circuit court, we reject Garrido-Crisanto's assertion that we should apply § 893.89(4)(c)'s exception "for damages resulting from negligence in the maintenance, operation or inspection of an improvement to real property" to Garrido-Crisanto's claims that the elevator should have had a safety gate.[6]

**III. Wisconsin Stat. §§ 893.89(6) and 102.29 do not work together to bar application of the statute of repose to this case by virtue of Wausau's subrogation claim.**

¶ 26. Garrido-Cristano also contends that Wis. Stat. § 893.89(6) and Wis. Stat. § 102.29 act together to

---

[6] We emphasize that the circuit court's summary judgment order only dismissed Garrido-Crisanto's claims to the extent that they were premised on a structural defect, that is, the failure to include a safety gate on the elevator. The circuit court left open the possibility that Garrido-Crisanto could raise other claims related to Heritage's negligence in maintaining and operating the elevator. Garrido-Crisanto stipulated to dismissing those other claims without prejudice because he was not prepared to pursue them but wished to obtain a final order from which he could appeal the circuit court's summary judgment order dismissing his structural-defect claims.

bar worker's compensation actions from the ten-year statute of repose set forth in § 893.89 and that this action is based in worker's compensation under Wis. Stat. ch. 102 by virtue of Wausau's subrogation claim. He cites to no case law in support of this conclusion, but rather, relies exclusively on the plain language of the statutes and extrinsic evidence that he argues is indicative of the legislature's intent. As such, we begin with the plain language of the statutes, but because we conclude that the statutory language is clear and unambiguous, we do not turn to extrinsic evidence of the legislature's intent. *See Kalal*, 271 Wis. 2d 633, ¶ 48.

¶ 27. WISCONSIN STAT. § 893.89(6) states that "[t]his section [setting forth the ten-year statute of repose] does not affect the rights of any person under [Wis. Stat.] ch. 102." While Wis. Stat. § 102.29(1)(a) provides, in relevant part:

> *The making of a claim for compensation against an employer or compensation insurer for the injury or death of an employee shall not affect the right of the employee . . . to make claim or maintain an action in tort against any other party for such injury or death,* hereinafter referred to as a 3rd party; nor shall the making of a claim by any such person against a 3rd party for damages by reason of an injury to which ss. 102.03 to 102.66 are applicable, or the adjustment of any such claim, affect the right of the injured employee . . . to recover compensation. An employer or compensation insurer that has paid or is obligated to pay a lawful claim under this chapter shall have the same right to make claim or maintain an action in tort against any other party for such injury or death . . . .

(Emphasis added.) According to Garrido-Crisanto, the plain language of the two statutes leaves it "crystal clear" "that an injured worker who receives [worker's] compensation benefits shall not have their right to

maintain a third party tort action affected thereby" and that because he is "asserting rights ensured and controlled by § 102.29" through Wausau's subrogation claim, his tort claims against Heritage are exempt from repose. The circuit court disagreed and so do we.

¶ 28. To begin, the plain language of WIS. STAT. § 893.89(6) does not support Garrido-Crisanto's argument. That statute simply states that the ten-year statute of repose "does not affect the rights of any person under [WIS. STAT.] ch. 102." *See* § 893.89(6). Garrido-Crisanto's rights *under ch. 102* were not affected in this case. Garrido-Crisanto admits that he filed for worker's compensation and that he received that compensation from Wausau. In fact, Wausau is named as an involuntary plaintiff in this action. Garrido-Crisanto's claims against Heritage are for negligence and safe-place statute violations; they are not worker's compensation claims under ch. 102, and they do not become worker's compensation claims by virtue of Wausau's subrogation claim.

¶ 29. Nor does WIS. STAT. § 102.29(1)(a) create a new right to Garrido-Crisanto's third-party tort claims against Heritage that is enforceable under WIS. STAT. § 893.89(6). Section 102.29(1)(a) states, in relevant part, that "[t]he making of a claim *for [worker's] compensation . . .* shall not affect the right of the [individual] . . . to make claim or maintain an action in tort against . . . a 3rd party . . . ." (Emphasis added.) Here, Heritage is not asserting that Garrido-Crisanto's *worker's compensation* claims bar his tort claims, but rather, that the *statute of repose* bars those claims. Section 102.29(1)(a) simply states that the right to worker's compensation does not impact a worker's right to recover in tort against a third party who is not the

employer. The statute preserves an existing common law right, it does not create a new right to tort claims against a third party and it does not permit a party to bypass the statute of repose. *See Severin v. Luchinske*, 271 Wis. 378, 383, 73 N.W.2d 477 (1955).[7] As such, we affirm the circuit court.

*By the Court.*—Order affirmed.

---

[7] *Severin v. Luchinske*, 271 Wis. 378, 73 N.W.2d 477 (1955) held that:

> The fact that sec. 102.29, Stats. appears in the chapter entitled 'Workmen's Compensation' does not change the character of the action brought against a third party, which as we have said, is one at law founded in tort. There is nothing in the workmen's compensation law which discloses a legislative purpose of creating a new remedy for an injury to an employee caused by the negligent act of a third party. That remedy existed at common law and was neither enlarged nor impaired by enactment of sec. 102.29, Stats.

*Severin*, 271 Wis. at 383.