Sharal Y. DOEPKE-KLINE, Petitioner-Appellant,†

v.

LABOR AND INDUSTRY REVIEW COMMISSION and SBC
Communications, Inc., Respondents-Respondents.

Court of Appeals

*No. 2005AP106. Submitted on briefs June 14, 2005.
—Decided August 18, 2005.*

2005 WI App 209

(Also reported in 704 N.W.2d 605.)

† Petition to review denied 11-11-05.

On behalf of the petitioner-appellant, the cause was submitted on the briefs of *John S. Williamson, Jr.*, Appleton.

On behalf of the respondent-respondent, Labor and Industry Review Commission, the cause was submitted on the brief of *David C. Rice, asst. attorney general*, and *Peggy A. Lautenschlager, attorney general*.

On behalf of the respondent-respondent, SBC Communications, Inc., the cause was submitted on the brief of *Lisa M. Bergersen, Lindner & Marsack, S.C.*, Milwaukee.

Before Lundsten, P.J., Vergeront and Higginbotham, JJ.

¶ 1. VERGERONT, J. This appeal concerns the claim of Sharal Doepke-Kline that her employer violated the Wisconsin Fair Employment Act (WFEA) by discharging her because of her asthma, refusing to accommodate her disability, and discriminating against her in the terms and conditions of her employment because of her disability. The Labor and Industry Review Commission dismissed her claim, concluding that she did not demonstrate she was an individual with a disability within the meaning of WIS. STAT. § 111.32(8),[1] and the circuit court affirmed. Doepke-Kline contends

---

[1] WISCONSIN STAT. § 111.32(8) provides:

**(8)** "Individual with a disability" means an individual who:

(a) Has a physical or mental impairment which makes achievement unusually difficult or limits the capacity to work;

(b) Has a record of such an impairment; or

on appeal that the Commission erred in deciding that *Chicago, Milwaukee, St. Paul & Pacific Railway Co. v. DILHR*, 62 Wis. 2d 392, 215 N.W.2d 443 (1974), did not determine that a diagnosis of asthma alone establishes a disability under the WFEA; consequently, Doepke-Kline asserts, the Commission erred in deciding she had not established a disability. We conclude that *Chicago, Milwaukee* does not hold that a diagnosis of asthma alone establishes a disability within the meaning of the WFEA. We also conclude that the Commission applied the correct legal standard in deciding that Doepke-Kline failed to establish she had a disability within the meaning of § 111.32(8). We therefore affirm.[2]

## BACKGROUND

¶ 2.   Doepke-Kline began working for SBC Communications, Inc., in February 1989. In 1997 she began working at its customer call operations center in Appleton as a service representative. Her position involved handling calls from residential customers related to

---

(c) Is perceived as having such an impairment.

With certain exceptions, employers are prohibited from terminating employment and discriminating against any individual in terms, conditions or privileges of employment based on a disability. Wis. Stat. §§ 111.321, 111.322(1), 111.34. All references to the Wisconsin Statutes are to the 2003–04 version unless otherwise noted.

[2] Doepke-Kline also contends on appeal that she was discharged because of her disability and her employer did not prove it could not reasonably accommodate her disability without imposing a hardship on the employer's business. Because we affirm the Commission's determination that Doepke-Kline did not establish she was an individual with a disability, we do not address these contentions.

orders and billing issues; she was also required to recommend and sell products and services to customers.[3]

¶ 3.   SBC has an attendance policy under which there is a threshold for "incidental absences" in a rolling twelve-month period. An employee who exceeds that threshold is considered to have unsatisfactory attendance and a progressive discipline begins at that point. Incidental absences do not include certain types of absences, among others, Family and Medical Leave Act (FMLA) absences, absences under the company's sickness and accidental disability benefit plans, and vacations. In April 1999, SBC initiated a new attendance program, which was explained to all employees, including Doepke-Kline. As of August 1999, Doepke-Kline had accumulated a sufficient number of incidental absences so that, under the new attendance program, she should have been at the third step of discipline, which is a suspension. However, because of the number of her absences that year, there was confusion regarding her disability leave time and her FMLA time; as a result, no disciplinary steps were taken and her attendance status was maintained at a satisfactory level. At that time the attendance manager met with Doepke-Kline and explained the status of her attendance record and the fact that she would be progressed in the disciplinary system if she were to incur any further incidental absences.

¶ 4.   Doepke-Kline did incur further incidental absences and was subject to progressive discipline, beginning with a written warning for excessive incidental absences in October 1999. She was eventually termi-

---

[3] The facts related in paragraphs 2–4 are taken from the findings of the hearing examiner, as modified and adopted by the Commission.

341

nated for unsatisfactory attendance in April 2000. The various causes of the absences between April 1999 and March 27, 2000, that SBC considered to be a violation of its attendance program, were, as reported by Doepke-Kline, stomach flu, "sick," back pain, asthma, pneumonia and a cold. The March 27, 2000 incident involved being more than one hour late for her shift due to an asthma attack.

¶ 5. Doepke-Kline filed a complaint with the Department of Workforce Development, Equal Rights Division, alleging that SBC violated the WFEA by discharging her because of a disability, asthma; refusing to reasonably accommodate her disability; and discriminating against her in the terms and conditions of employment because of her disability. After a hearing the examiner issued a written decision dismissing her claims. Doepke-Kline appealed to the Commission and the Commission affirmed the examiner's decision, with some modifications and additions to the findings of facts and conclusions of law. The Commission concluded that Doepke-Kline had not sustained her burden of proving that she had been discriminated against because of her disability.[4]

¶ 6. In its decision the Commission adopted the examiner's finding that Doepke-Kline's termination was in accordance with SBC's attendance guidelines. The Commission adopted as modified or added the following findings relating to her asthma:

---

[4] Doepke-Kline's complaint also alleged that SBC discriminated against her and discharged her in retaliation for making a complaint under the WFEA. The examiner dismissed these claims as well, and the Commission affirmed these rulings. Doepke-Kline does not challenge this aspect of the Commission's decision.

5. Doepke-Kline's claimed disability is asthma. Doepke-Kline, who was age 35 at the time of the hearing, alleges that she has had asthma since she was 16. Over the years Doepke-Kline's physicians have prescribed inhalers, a nebulizer and occasionally Prednisone (a steroid), to treat her asthma.

40. In 1997 . . ., Doepke-Kline was seen by Jordan Fink, M.D., a specialist in allergy and immunology. Dr. Fink primarily relied on Doepke-Kline's self-reported symptoms and health history in concluding that she had been diagnosed and treated for asthma over a period of 13 years.

41. Richard Effros, M.D., a pulmonary specialist, examined certain of Doepke-Kline's medical records, including Dr. Fink's report of his 1997 examination, at [SBC's] request. Dr. Effros opined that asthma can be a very mild illness or a life-threatening problem; there is no essential difference between receiving a nebulizer treatment at home or at a hospital. Doepke-Kline's medical records did not establish she had bronchial asthma; there was no record that a total pulmonary function test had ever been administered; the results of the spiratometry test administered in 1997 appear to demonstrate that Doepke-Kline had mild restriction of her breathing passages and that she was not putting forth her full effort in participating in the tests; and his conclusion, based on the medical records that he reviewed, was that Doepke-Kline suffered from chronic bronchitis probably due to her lengthy history of smoking cigarettes.

41. [sic] Doepke-Kline explains that her asthma restricted her life activities because she became incapacitated when she had a severe attack.

¶ 7.   In its opinion the Commission considered the definition of "disability" in Wis. Stat. § 111.32(8)(a):   "a physical or mental impairment which makes achieve-

343

ment unusually difficult or limits the capacity to work." Relying on case law construing this definition, the Commission stated that Doepke-Kline had to prove that she had an impairment that places a substantial limitation on life's normal functions or on a major life activity or limits her capacity to work at her job. The Commission concluded the evidence did not establish that Doepke-Kline's pulmonary condition—whether the proper diagnosis is asthma or chronic bronchitis—met this standard. In particular, the Commission determined the occasional absences that she self-reported as attributable to asthma were not sufficient to establish that her pulmonary condition substantially limited normal life functions or a major life activity or limited her capacity to work. The Commission rejected Doepke-Kline's argument that under *Chicago, Milwaukee* a diagnosis of asthma alone supports a conclusion that Doepke-Kline is disabled. The Commission first observed that the evidence placed a diagnosis of asthma for Doepke-Kline "in serious question." But even if that diagnosis were established, the Commission stated, *Chicago, Milwaukee* does not hold that every diagnosis of asthma constitutes a disability.

¶ 8.　Doepke-Kline appealed the Commission's decision to the circuit court, which affirmed the decision.

## DISCUSSION

¶ 9.　On appeal from the circuit court's order, Doepke-Kline repeats her contention that the Commission erred in its reading of *Chicago, Milwaukee*. That case, Doepke-Kline asserts, holds that a diagnosis of asthma alone establishes a disability within the mean-

344

ing of the WFEA,[5] and the Commission is not free to disregard that holding.

¶ 10.   On an appeal from a circuit court's order affirming or reversing an administrative agency's decision, we review the decision of the agency, not that of the circuit court, and our scope of review is the same as that of the circuit court. *Target Stores v. LIRC*, 217 Wis. 2d 1, 11, 576 N.W.2d 545 (Ct. App. 1998). We affirm the agency's findings of fact if there is credible and substantial evidence in the record upon which reasonable persons could rely to make the same findings. *Id.* Whether the facts as found by the Commission establish that Doepke-Kline is an individual with a disability under Wis. Stat. § 111.32(8) is a question of law. *Hutchinson Tech., Inc. v. LIRC*, 2004 WI 90, ¶ 10, 273 Wis. 2d 394, 682 N.W.2d 343. Although we generally review a question of law de novo, when the question of law involves the construction of a statute that an agency is charged with administering, we may give deference to the agency's construction. *Target*, 217 Wis. 2d at 13. The supreme court has held that the Commission's determination of whether an individual is disabled under § 111.32(8) is entitled to great weight deference. *See Hutchinson Tech.*, 273 Wis. 2d 394, ¶ 10 n.6. Under that standard of review, we affirm the Commission's decision unless it directly contravenes a statute, is clearly contrary to legislative intent, or lacks a rational

---

[5] We recognize that the Commission questioned the diagnosis of asthma, but we will accept Doepke-Kline's assertions that she had asthma and had been diagnosed with asthma in addressing her argument based on *Chicago, Milwaukee, St. Paul & Pacific Railway Co. v. DILHR*, 62 Wis. 2d 392, 215 N.W.2d 443 (1974).

basis. *Crystal Lake Cheese Factory v. LIRC*, 2003 WI 106, ¶ 28, 264 Wis. 2d 200, 664 N.W.2d 651.

¶ 11.   Doepke-Kline asserts that we should not accord any deference to the Commission's decision, but instead review it de novo, because this court is in a better position than the Commission to interpret judicial rulings. The Commission and SBC respond that great weight deference is appropriate. Without resolving whether we should defer to an agency when the legal issue involves the interpretation of judicial rulings, we will review de novo whether the Commission's construction of *Chicago, Milwaukee* and other cases is correct.

¶ 12.   In *Chicago, Milwaukee*, the employee was terminated after two weeks of employment with a railroad company. Based on the evidence that he was performing his work satisfactorily but was terminated on the recommendation of the company's doctor because of his history of asthma, the Department of Industry, Labor, and Human Relations determined that the employer had engaged in discrimination based on an alleged handicap. *Chicago, Milwaukee*, 62 Wis. 2d at 395. On appeal, the employer did not challenge the department's finding that the employee had been terminated because of his history of asthma. *Id.* at 396–97. The relevant issue before the court was whether "asthma or other physical disorders of the complainant constitute a handicap," the term used in WIS. STAT. § 111.32(5)(a) (1967). *Chicago, Milwaukee*, 62 Wis. 2d at 397. The term "handicap" was not defined in that statute and the employer urged the court to decide that it meant the employee was "incapacitated from normal remunerative occupation, an economic detriment to the normal employer and require[d] rehabilitative training." *Id.* at 397.

346

¶ 13. The *Chicago, Milwaukee* court viewed the employer's proposed definition as too restrictive. *Id.* at 397–98. The court noted with approval the dictionary definition of handicap: a "disadvantage that makes achievement unusually difficult; esp.: a physical difficulty that limits the capacity to work." *Id.*[6] The court also noted a broader definition of handicap in another chapter of the statutes. *Id.* at 398. "In either case," the court stated, "it is our opinion that handicap as used in Sec. 111.32(5), Stats. must be defined as including such diseases as asthma which make achievement unusually difficult." *Id.* The court then went on to decide that the employer did not have a defense under § 111.32(5)(f) (1967), which allowed employers to refuse to hire or to terminate an employee who, because of a handicap, was unable to perform the job efficiently at the standards set by the employer.

¶ 14. Doepke-Kline relies on the *Chicago, Milwaukee* court's statement that "handicap . . . must be defined as including such diseases as asthma which make achievement unusually difficult," 62 Wis. 2d at 398, arguing that this means asthma is a disease that always makes achievement unusually difficult. While this may be a reasonable reading of the sentence in isolation, the context of the sentence reveals another reading: that diseases such as asthma are handicaps if they make achievement unusually difficult. The context of the statement is that the court is rejecting the employer's proposed narrow definition of handicap, which, apparently in the court's view, would eliminate asthma under all circumstances from being a handicap.

---

[6] This definition later formed the basis for the definition now found in Wis. Stat. § 111.32(8). *See Brown County v. LIRC*, 124 Wis. 2d 560, 571, 369 N.W.2d 735 (1985).

¶ 15. Another significant aspect of context in *Chicago, Milwaukee* is that the employee there did not have an impairment that actually made achievement unusually difficult or affected his ability to perform his job, as the court's discussion of the lack of a defense under Wis. Stat. § 111.32(5)(f) (1967) makes clear: the termination, rather, was based on the employer's perceptions and the employee's medical history. With the later enactment of § 111.32(8) (1981–82), 1981 Wis. Laws, ch. 334, § 9, "handicapped individual" (now "individual with a disability") was defined to include not only a person who "has a physical or mental impairment which makes achievement unusually difficult or limits the capacity to work," para. (8)(a), but also a person who has a record of such an impairment or is perceived as having such an impairment. Paragraphs (8)(b) and (c). Without this statutory framework, the *Chicago, Milwaukee* court was attempting to define "handicap" to provide protection for someone who could perform the job satisfactorily but who was terminated because of a perception of impairment based on medical history. Thus, *Chicago, Milwaukee* is not addressing the issue that Doepke-Kline asserts it decided: whether, when a complainant asserts she has an impairment that makes achievement unusually difficult or limits the capacity to work, need she prove only the diagnosis of asthma?

■

¶ 16. Cases decided after *Chicago, Milwaukee* persuade us that Doepke-Kline must do more than prove that she has a diagnosis of asthma. In *City of La Crosse Police & Fire Commission v. LIRC*, 139 Wis. 2d 740, 760, 407 N.W.2d 510 (1987), the supreme court reviewed the four cases that had been decided under Wis. Stat. § 111.32(8) since 1979—after *Chicago,*

*Milwaukee*—and clarified "the analytical framework that ha[d] emerged from them."[7] After observing that the burden is on the claimant to "establish that a particular physical condition constituted a handicap within the meaning of the [WFEA]," the court described a two-step analysis: First, the claimant must establish that there is a real or perceived impairment—with an impairment defined as "a real or perceived lessening or deterioration or damage to a normal bodily function or bodily condition, or the absence of such bodily function or such bodily condition." *City of La Crosse*, 139 Wis. 2d at 760–61. Second, the claimant must establish that such a condition actually makes or is perceived as making achievement unusually difficult or limits the capacity to work. *Id.* at 762. "Makes achievement unusually difficult" means there is a "substantial limitation on life's normal functions or a substantial limitation on a major life activity." *Id.* at 761. "[L]imits the capacity to work" refers to the particular job in question. *Id.* The court then reviewed each of the prior four cases it had identified to show that they fit into this framework, and then analyzed the evidence in the case before it using the same analysis. *Id.* at 762–64.

¶ 17. In *Hutchinson Technology*, the supreme court applied the analysis articulated in *City of La Crosse*. *Hutchinson Tech.*, 273 Wis. 2d 394, ¶¶ 15–19. The *Hutchinson Technology* court concluded the claimant there established that her back pain, related to disc problems, met the standards under each step in the analysis.

---

[7] *Brown County v. LIRC*, 124 Wis. 2d 560, 369 N.W.2d 735 (1985); *American Motors Corp. v. LIRC*, 119 Wis. 2d 706, 350 N.W.2d 120 (1984); *Dairy Equip. Co. v. DILHR*, 95 Wis. 2d 319, 290 N.W.2d 330 (1980); *Bucyrus-Erie Co. v. DILHR*, 90 Wis. 2d 408, 280 N.W.2d 142 (1979).

¶ 18.   The analysis articulated in *City of La Crosse* and applied more recently in *Hutchinson Technology* is not consistent with Doepke-Kline's reading of *Chicago, Milwaukee*. We think it is unlikely that the supreme court would establish an analysis that requires a claimant to prove specific facts with respect to the asserted impairment and its impact on the claimant, but nonetheless intend, without mentioning *Chicago, Milwaukee*, that one disease—asthma—be exempted from that analysis. We also observe that in *Dairy Equipment Co. v. DILHR*, 95 Wis. 2d 319, 328, 290 N.W.2d 330 (1980), the supreme court describes as follows the sentence in *Chicago, Milwaukee* on which Doepke-Kline relies:   "This court has concluded that, *in certain circumstances*, a ' . . . handicap as used in sec. 111.32(5), Stats., must be defined as including such diseases as asthma which make achievement unusually difficult.' " *Dairy Equip. Co.*, 95 Wis. 2d at 328 (citation omitted, emphasis added). The addition of "in certain circumstances" suggests that the supreme court does not view its holding in *Chicago, Milwaukee* as establishing that in every case asthma is a handicap within the meaning of the statute.

¶ 19.   When supreme court decisions appear to conflict, we are to harmonize them if we can; if we cannot, we are to follow the more recent decision. *See Ambrose v. Cont'l Ins. Co.*, 208 Wis. 2d 346, 354–55, 560 N.W.2d 309 (Ct. App. 1997). We are satisfied that we can harmonize *Chicago, Milwaukee* with *City of La Crosse* by reading the former as holding that asthma can be a disability under the WFEA if the claimant establishes the elements articulated in *City of La Crosse*. We therefore conclude that this is the correct reading of *Chicago, Milwaukee*. The Commission arrived at this

same interpretation of the case, and, thus, did not err in rejecting Doepke-Kline's argument that a diagnosis of asthma alone was sufficient to establish that she had a disability under WIS. STAT. § 111.32(8).[8]

---

[8] Although we have resolved the issue under Wisconsin law, we observe that courts deciding cases under the Federal Ameri cans With Disabilities Act (which provides that a disability includes "a physical or mental impairment that substantially limits one or more of the major life activities of such individual," 42 U.S.C. § 12102(2)(A)), are in general agreement that an individualized showing is required. *See, e.g., Webb v. Clyde L. Choate Mental Health & Dev. Ctr.*, 230 F.3d 991, 998 (7th Cir. 2000) (claimant failed to establish that he suffered from a disability under ADA because he failed to present evidence that his asthma and other conditions substantially limited him in the major life activity of working); *Jeffrey v. Ashcroft*, 285 F. Supp. 2d 583, 589 (M.D. Pa. 2003) (whether particular impairment substantially limits a major life activity such as breathing requires an individualized assessment on a case-by-case basis); *Crock v. Sears, Roebuck & Co.*, 261 F. Supp. 2d 1101, 1117 (S.D. Iowa 2003) (having an impairment in itself does not make one disabled for purposes of the ADA; claimants also need to demonstrate that the impairment limits a major life activity; a case-by-case analysis is required since an impairment that disables some individuals may not disable others); *Faircloth v. Duke Univ.*, 267 F. Supp. 2d 470, 473 (M.D.N.C. 2003) (the determination of whether asthma is a disability is necessarily made on a case-by-case basis based on the facts presented to the court and such determinations are not suitably made at the motion to dismiss stage of a case); *Bond v. Sheahan*, 152 F. Supp. 2d 1055, 1063–66 (N.D. Ill. 2001) (asthma undoubtedly qualifies as a physical impairment, but some impairments may be disabling for particular individuals but not for others); *Mayers v. Washington Adventist Hosp.*, 131 F. Supp. 2d 743, 749 (D. Md. 2001) (having asthma is not sufficient to demonstrate a disability under the ADA because claimant must also establish that her asthma and allergies substantially limit her ability to breath; this determination is made on a case-by-case basis

¶ 20. The Commission applied the analysis established in *City of La Crosse* in its determination that Doepke-Kline did not prove she was an individual with a disability under WIS. STAT. § 111.32(8). We conclude this is the correct standard. Doepke-Kline does not develop an argument that, if this is the correct standard, the Commission erred in concluding she was not disabled based on its factual findings. Nor does she develop an argument that the Commission's findings of fact are not supported by the requisite evidence. Accordingly, we conclude the Commission did not err in deciding that Doepke-Kline was not an individual with a disability. We therefore affirm the order of the circuit court.

*By the Court.*—Order affirmed.

taking into account corrective measures that may alleviate the severity of the symptoms); *Henderson v. New York Life, Inc.*, 991 F. Supp. 527, 537–39 (N.D. Tex. 1997) (claimant has asthma but has not shown it substantially limits a major life activity); *Castro v. Local 1199, Nat'l Health & Human Servs. Employees Union*, 964 F. Supp. 719, 723 (S.D.N.Y. 1997) (individualized analysis particularly appropriate for disability claims relating to asthma because the severity of asthma varies a great deal); *Hendler v. Intelecom USA, Inc.*, 963 F. Supp. 200, 207 (E.D.N.Y. 1997) (each disability determination must be made on a case-by-case basis; because one plaintiff with asthma is substantially limited in the major life activity of breathing does not mean that every plaintiff with asthma has a qualifying disability under the ADA and vice versa); *MacLean v. State Dept. of Educ.*, 986 P.2d 903, 910–11 (Ariz. Ct. App. 1999) (whether claimant has a disability under the ADA is an individualized inquiry; asthma is a physical impairment but whether it substantially impairs the claimant's breathing is a matter of factual dispute on this record).