**COURT OF APPEALS**
**DECISION**
**DATED AND FILED**

**January 26, 2023**

Sheila T. Reiff
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2022AP738**

STATE OF WISCONSIN

Cir. Ct. No. 2021CV172

IN COURT OF APPEALS
DISTRICT IV

MICHELLE TAUSCHER,

PLAINTIFF-APPELLANT,

QUARTZ HEALTH PLAN CORPORATION,

INVOLUNTARY-PLAINTIFF,

V.

ACUITY, A MUTUAL INSURANCE COMPANY,

DEFENDANT-RESPONDENT.

APPEAL from an order of the circuit court for La Crosse County: GLORIA L. DOYLE, Judge. *Reversed.*

Before Kloppenburg, Fitzpatrick, and Graham, JJ.

¶1      GRAHAM, J.  Michelle Tauscher appeals a circuit court order that granted summary judgment in favor of Acuity, A Mutual Insurance Company, and dismissed Tauscher's negligence claim, which sought damages for injuries she sustained on property Acuity insured.  We reject Acuity's argument that Tauscher's negligence claim is time barred by the statute of repose found in WIS. STAT. § 893.89 (2019-20).[1]  That statute does not apply because Acuity has not shown that Tauscher's claim arises out of "any deficiency or defect in the design, land surveying, planning, supervision or observation of construction of, the construction of, or the furnishing of materials for, [an] improvement to real property."  *See* § 893.89(2).  We also reject Acuity's arguments that Tauscher's negligence claim fails as a matter of law for other reasons.  Accordingly, we reverse the circuit court's summary judgment order.

## BACKGROUND

¶2      This appeal concerns injuries Tauscher sustained in December 2020, when she fell over an unlit exterior step at a private residence in Tomah, Wisconsin that was owned by Wayne Kling and insured by Acuity.  The following facts, which are undisputed for purposes of summary judgment, are derived from the pleadings, depositions, and the parties' answers to interrogatories.

¶3      At Kling's residence, there is a concrete walk that traverses the front yard, connecting the front porch to the city sidewalk in front of the residence.  At the end of the private front walk, there is a single step down to the city sidewalk

---

[1] All references to the Wisconsin Statutes are to the 2019-20 version.

six inches below. The front walk and step have been present and unchanged for decades and have not fallen into disrepair.

¶4 Tauscher was a guest at the Kling home on the night of her injury. After she left around 7:00 p.m., she followed the front walk toward the sidewalk and fell over the step at the end of the front walk, shattering her kneecap. It is undisputed that the cause of Tauscher's fall was that she did not see the step.

¶5 At the time Tauscher fell, it was dark outside but not pitch black. For purposes of summary judgment, Acuity concedes that Kling's front walk and step were not illuminated by any exterior light source, wired or otherwise, on the Kling property. It is undisputed that there has never been any wired light fixture on the exterior of the Kling home, that Kling has on occasion illuminated the front walk and step with solar light sticks, and that no solar light sticks were present to illuminate the front walk and step on the evening of Tauscher's fall.[2]

¶6 Tauscher commenced this action by filing a complaint against Acuity, but not against Kling.[3] Her complaint alleged that Kling was negligent in "fail[ing] to properly construct, erect, inspect, maintain, repair, safeguard, and

---

[2] To be clear, our review of the summary judgment materials reveals a dispute between witnesses about whether there were solar light sticks present on the evening that Tauscher fell. More specifically, Kling testified in his deposition that he believed that there were solar light sticks present that evening, and Tauscher and another witness testified that none were present when Tauscher fell. Acuity takes the position that any such dispute is immaterial for summary judgment purposes, and it asked the circuit court to assume in Tauscher's favor that there was no source of exterior lighting, including solar sticks, present that evening. For the purpose of this appeal, we also assume that there were no solar light sticks present that evening.

[3] WISCONSIN STAT. § 632.24, sometimes referred to as the "direct action statute," allows an injured party to bring suit directly against an insurer for its insured's alleged negligence, without also bringing suit against the insured. *See Estate of Otto v. Physicians Ins. Co. of Wisconsin, Inc.*, 2008 WI 78, ¶32, 311 Wis. 2d 84, 751 N.W.2d 805.

warn [Tauscher] regarding the unsafe condition of the premises," and that his negligence caused her injuries.[4] Despite this broad language in her complaint, Tauscher later disavowed any reliance on a theory of liability based on the construction of the front walk and step. She clarified that her negligence claim is not based on the physical condition of the front walk and step, and that it is based solely on the absence of exterior lighting on Kling's property that would have allowed Tauscher to see the step.

¶7 Following discovery, Acuity moved for summary judgment, arguing that Tauscher's claim is time barred by the "builder's statute of repose" in WIS. STAT. § 893.89. More specifically, Acuity appeared to argue that, to the extent Tauscher's negligence claim is based on the absence of exterior lighting, that absence is itself a deficiency or defect in the design of the front walk that is governed by the statute of repose. Acuity also argued that Tauscher's negligent failure to light claim is akin to a negligent failure to warn of a defective improvement claim. Therefore, following this court's analysis of a failure to warn claim in *Rosario v. Acuity & Oliver Adjustment Co.*, 2007 WI App 194, 304 Wis. 2d 713, 738 N.W.2d 608, Acuity argued that Tauscher's failure to light claim is likewise subject to the statute of repose. Tauscher opposed Acuity's motion,

---

[4] When originally filed, Tauscher's complaint also included a claim based on the safe place statute, WIS. STAT. § 101.11. Generally speaking, the safe place statute provides that every employer and owner of a public building has a duty to provide a place that is safe for employees and frequenters. *Megal v. Green Bay Area Visitor & Convention Bureau, Inc.*, 2004 WI 98, ¶9, 274 Wis. 2d 162, 682 N.W.2d 857. Claims made under the safe place statute are distinct from common law negligence claims because the safe place statute "addresses unsafe conditions, not negligent acts" and imposes a "higher standard of care than that imposed by common-law negligence." *Id.*

In this case, Tauscher stipulated to the dismissal of her claim under the safe place statute, and we discuss the safe place statute no further, except as necessary to discuss pertinent differences between negligence and safe place claims.

arguing that Kling's negligent failure to light the front walk is not a deficiency or defect in the design of the front walk.

¶8    The circuit court granted Acuity's motion for summary judgment, concluding that Acuity is entitled to judgment as a matter of law because Tauscher's claim is time barred by the statute of repose in WIS. STAT. § 893.89. The court stated that Tauscher's claim arises out of a deficiency or defect in the front walk and step, which "were in good repair and had been maintained unchanged for decades." It stated that this court's discussion of failure to warn claims in **Rosario** is "right on point" and controls the proper analysis of Tauscher's negligence claim. *See Rosario*, 304 Wis. 2d 713. Finally, the circuit court concluded that, even if the statute of repose does not bar Tauscher's negligence claim, her claim should be dismissed for other reasons discussed in greater detail below. Tauscher appeals.

### DISCUSSION

¶9    This case comes to us on appeal of the circuit court's grant of a motion for summary judgment. We review the circuit court's decision de novo, "employing the same methodology as the circuit court." *Palisades Collection LLC v. Kalal*, 2010 WI App 38, ¶9, 324 Wis. 2d 180, 781 N.W.2d 503. Pursuant to WIS. STAT. § 802.08(2), summary judgment shall be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." In conducting this analysis, "[w]e view the summary judgment materials in the light most favorable to the nonmoving party." *Smaxwell v. Bayard*, 2004 WI 101, ¶12, 274 Wis. 2d 278, 682 N.W.2d 923. Summary judgment should not be granted in a

5

defendant's favor "unless the facts presented conclusively show that the plaintiff's action has no merit and cannot be maintained." *Id.* (internal quotation omitted).

¶10 Acuity asserts that it is entitled to judgment as a matter of law because Tauscher's claim is time barred by the statute of repose in WIS. STAT. § 893.89 or, alternatively, because Tauscher cannot satisfy the elements of a negligence claim for other reasons identified by the circuit court. Whether Acuity is entitled to summary judgment turns on the interpretation and application of § 893.89, as well as the elements of a common law negligence claim, both of which are questions of law that we review de novo. *See Nowell v. City of Wausau*, 2013 WI 88, ¶19, 351 Wis. 2d 1, 838 N.W.2d 852 (statutory interpretation); *see generally Hoida, Inc. v. M & I Midstate Bank, Inc.*, 2006 WI 69, ¶¶22-26, 291 Wis. 2d 283, 717 N.W.2d 17 (elements of negligence). We address Acuity's arguments in turn.

### I. Acuity's Arguments Regarding
### WIS. STAT. § 893.89's Statute of Repose

¶11 Acuity's primary argument in favor of summary judgment is that Tauscher's negligence claim is time barred by WIS. STAT. § 893.89. Section 893.89 is a statute of repose that sets forth a seven-year "exposure period" during which an action for injury "arising out of" certain "deficiencies and defects" in "improvements to real property" must be commenced.[5] If the statute of

---

[5] WISCONSIN STAT. § 893.89 provides in pertinent part:

> (1) In this section, "exposure period" means the 7 years immediately following the date of substantial completion of the improvement to real property.

> (2) [With exceptions not pertinent here,] no cause of action may accrue and no action may be commenced, including an action for contribution or indemnity, against the owner or

(continued)

6

repose applies to an action and the seven-year exposure period has expired, the action is time barred and must be dismissed. *See* § 893.89(1)-(2).

¶12 Under the statute, an item is an "improvement to real property" if it is a "permanent addition to real property that enhances its capital value, involves the expenditure of labor and money, and was designed to make the property more useful or valuable." *See **Kohn v. Darlington Cmty. Schs.***, 2005 WI 99, ¶33, 283 Wis. 2d 1, 698 N.W.2d 794. The parties agree that the improvement at issue in this case is the front walk leading from Kling's front porch, including the step down to the city sidewalk.

¶13 The statute's seven-year "exposure period" begins to run the date of an improvement's "substantial completion." WIS. STAT. § 893.89(1), (2). An improvement is "substantially completed" when, among other things, it is occupied for its intended purpose. ***Holy Family Catholic Congregation v. Stubenrauch Assoc., Inc.***, 136 Wis. 2d 515, 523, 402 N.W.2d 382 (Ct. App. 1987). Here, the parties agree that the front walk and step were substantially

occupier of the property or against any person involved in the improvement to real property after the end of the [seven year] exposure period, to recover damages … for any injury to the person … arising out of any deficiency or defect in the design, land surveying, planning, supervision or observation of construction of, the construction of, or the furnishing of materials for, the improvement to real property.…

….

(4) This section does not apply to any of the following:

….

(c) An owner or occupier of real property for damages resulting from negligence in the maintenance, operation, or inspection of an improvement to real property.

completed decades ago, that they have remained unchanged for decades, and that they have not fallen into disrepair.

¶14     The text of WIS. STAT. § 893.89 distinguishes between different types of claims that relate to improvements in real property.  Claims that "arise out of any deficiency or defect in the design, land surveying, planning, supervision or observation of construction of, the construction of, or the furnishing of materials for, [an] improvement to real property" are subject to the statute of repose.[6]  Such claims are time barred if they are commenced more than seven years after substantial completion of the improvement.  *See* § 893.89(1)-(2).  Other claims, including claims that "result from the negligent maintenance, operation, or inspection of an improvement," are not subject to the seven-year time bar.  *See* § 893.89(4)(c).[7]

---

[6] Some of the cases we cite to refer to these types of deficiencies and defects as "structural defects."  *See Mair v. Trollhaugen Ski Resort*, 2006 WI 61, ¶¶12, 22, 291 Wis. 2d 132, 715 N.W.2d 598; *Rosario v. Acuity & Oliver Adjustment Co.*, 2007 WI App 194, ¶21, 304 Wis. 2d 713, 738 N.W.2d 608.  The term structural defect has been used in case law interpreting and applying the safe place statute, WIS. STAT. § 101.11.  *See e.g.*, *Mair*, 291 Wis. 2d 132, ¶21; *Rosario*, 304 Wis. 2d 713, ¶21; *Barry v. Employers Mut. Cas. Co.*, 2001 WI 101, ¶22, 245 Wis. 2d 560, 630 N.W.2d 517; *Rizzuto v. Cincinnati Ins. Co.*, 2003 WI App 59, ¶11, 261 Wis. 2d 581, 659 N.W.2d 476.  In such cases, courts have contrasted "structural defects" with "unsafe conditions associated with the structure of a building," and have concluded that safe place claims premised on structural defects are subject to WIS. STAT. § 893.89(2)'s time bar, but claims premised on unsafe conditions associated with the structure are not.  *See Mair*, 291 Wis. 2d 132, ¶29; *Rosario*, 304 Wis. 2d 713, ¶21.  Although our cases have stated that structural defects correlate to defects or deficiencies "in the design, land surveying, planning, supervision or observation of construction of, the construction of, or the furnishing of materials for, [an] improvement to real property," *Mair*, 291 Wis. 2d 132, ¶6, we do not assume that "structural defects" are necessarily coextensive with defects and deficiencies addressed in § 893.89(2), *id.*, ¶21.

[7] Some cases refer to WIS. STAT. § 893.89(4)(c) as an exception to the statute of repose.  *See Hocking v. City of Dodgeville*, 2010 WI 59, ¶49, 326 Wis. 2d 155, 785 N.W.2d 398 (stating that the maintenance exception in (4)(c) applies "when an improvement to real property is completed, but the owner or occupier is negligent in the maintenance, operation, or inspection of it, thus causing damage"); *Mair*, 291 Wis. 2d 132, ¶¶28, 23 (referring to § 893.89(4)(c) as an

(continued)

¶15   Wisconsin cases demonstrate that the key to determining whether a claim "arises" from a "deficiency or defect" in an improvement, and is thus subject to the statute of repose, is the cause (or causes) of the plaintiff's injury. If the claimed injury was caused by a deficiency or defect that is described in WIS. STAT. § 893.89(2), then the statute of repose applies to the claim. If the injury relates in some way to an improvement in real property, but was not caused by a deficiency or defect in the improvement that is described in § 893.89(2), then the statute of repose does not apply. *See Mair v. Trollhaugen Ski Resort*, 2006 WI 61, ¶30, 291 Wis. 2d 132, 715 N.W.2d 598 (stating that there was no genuine dispute of fact that the plaintiff's fall was caused by the defective design of a recessed floor drain, and was not caused by other conditions such as lighting and floor color that may have obscured the drain from view); *Rosario*, 304 Wis. 2d 713, ¶¶19, 27 (stating that "the undisputed facts clearly demonstrate that Rosario's injuries were caused by the defective structural design of the front step," and that "[t]here is no basis to attribute causation to any lack of warning").

¶16   Here, it is undisputed that Tauscher fell because she did not see the step at the end of the front walk. Although the front walk is an improvement and Tauscher's injury is related to the step, that alone is insufficient to bring Tauscher's claim within WIS. STAT. § 893.89(2)'s ambit. Rather, Tauscher's injury must arise from a deficiency or defect in the front walk. Acuity does not identify any deficiency or defect in the materials or construction of the front walk that caused Tauscher to miss the step. Nor does Acuity identify any deficiency or defect in the location or placement of the front walk or the height of the step.

exception, and stating that the exception involves a "structure falling into disrepair or not being maintained in a safe manner").

Instead, the crux of the parties' dispute is whether the lack of exterior lighting illuminating the front walk is a deficiency or defect in the design of that improvement.

¶17    Acuity appears to argue that Tauscher's claim arises from a deficiency or defect in the design of the front walk for two reasons.  First, although Acuity's briefing is not particularly clear on this point, Acuity may be arguing that the absence of lighting is an aspect of the original design of the front walk; therefore, it would follow that the original failure to install a light fixture to illuminate the step is a deficiency or defect in the design of the front walk that is subject to the statute of repose.  Second, Acuity argues that a claim based on the negligent failure to light an improvement is akin to a claim based on the negligent failure to warn of a deficient or defective improvement, which courts have concluded are likewise subject to the statute of repose.  We address these arguments in turn.

### A.  Absence of Lighting as a Deficiency or Defect in the Design of an Improvement

¶18    We begin with Acuity's argument that WIS. STAT. § 893.93(2) applies because the absence of lighting illuminating the front walk is a defect or deficiency in the original design of the front walk.  In addressing this argument, we observe that lighting conditions are not necessarily an intrinsic aspect of an improvement such as the front walk at issue in this case.  Certainly, a homeowner could install any number of light fixtures to illuminate an improvement.  Such fixtures could be permanent or temporary, could be affixed to the front of the house or to a freestanding pole, and could be powered by electric wiring, batteries, or solar energy.  And, such fixtures could be readily added, altered, or removed without changing any intrinsic physical aspect of the front walk and step.

10

¶19    Acuity does not cite any authority that has considered conditions extrinsic to an improvement to be a part of the improvement's design.  Nor does Acuity cite any authority for the proposition that items that can be added, altered, or removed without significant undertaking after the improvement is completed are part of an improvement's design.  Indeed, the statute and our case law point in the opposite direction.

¶20    As stated above, WIS. STAT. § 893.89(2) bars claims for injuries that arise out of "deficienc[ies] or defect[s] in the design" of an "improvement."  And, an improvement is defined as a "permanent addition to real property" that "involve[s] the expenditure of labor."  *Kohn*, 283 Wis. 2d 1, ¶33.  In assessing whether an item is "permanent," the pertinent inquiry is whether it "can be readily disassembled and moved."  *Id.*, ¶23.  In *Kohn*, our supreme court explained that the purpose of the statute is to protect from liability those acts that occur when designing, planning, and constructing an improvement, but not subsequent acts that occur after the improvement is completed.  *Id.*, ¶¶70-71.  These definitions and this statutory purpose lead to the conclusion that the design of an improvement encompasses original and permanent components or features that are intrinsic to the improvement and cannot be readily added, altered, or removed after the improvement is substantially completed.

¶21    Wisconsin cases likewise lead to the conclusion that an improvement's design encompasses intrinsic features and components that cannot be readily altered after completion.  In *Rosario*, 304 Wis. 2d 713, for example, the improvement at issue was a single three-inch exterior step, and we treated the height of the step, which violated the building code, as a defect in its design.  *Id.*, ¶¶2, 19.  In *Mair*, 291 Wis. 2d 132, ¶4, the improvement at issue was a recessed floor drain in the middle of a bathroom floor.  In that case, Mair's liability expert

opined that the recessed floor drain was defectively designed due to its deep and extensive slope and its placement in the middle of a pathway, and our supreme court treated the depth, width, and location of the drain as aspects of its design. *Id.*, ¶¶24-25.

¶22 Our case law also leads to the conclusion that the absence of a feature can be a part of an improvement's design when, if added, the missing feature would become a permanent part of the physical structure of the improvement itself. *Crisanto v. Heritage Relocation Servs.*, 2014 WI App 75, ¶¶8, 18, 355 Wis. 2d 403, 851 N.W.2d 771. In *Crisanto*, the improvement at issue was a freight elevator that had been designed and installed decades prior without a safety gate, and the cause of Crisanto's injury was the lack of a safety gate. *Id.*, ¶¶2, 8. There, we treated the elevator's lack of a safety gate as a defect in the design of the elevator. *See id.*, ¶18.

¶23 In contrast, Wisconsin cases lead to the conclusion that the presence or absence of readily alterable items or conditions in the proximity of the improvement may be "associated with" the improvement, but are not a part of its design. *Mair*, 291 Wis. 2d 132, ¶29. In *Mair*, our supreme court stated that the bathroom's lighting, the color of the floors, and a lack of warning signs could be considered conditions "associated with" the structure of the building, but it did not consider those conditions to be deficiencies or defects in the design of the floor drain. *Id.*, ¶26. Likewise, in *Rosario*, the expert retained by Rosario opined that her fall could be attributed to her movement from the dark interior to the sunny exterior, which masked the "vertical transition," combined with the lack of visual cues warning of the step's existence. *Id.*, ¶26. Although we concluded that Rosario raised no genuine dispute of material fact that the lighting and lack of

warning signs contributed to her fall, we also did not state that those features were part of the step's design. *Id.*, ¶27.

¶24 In summary, Wisconsin cases all lead to the conclusion that the "design" of an improvement encompasses its intrinsic and permanent components and features. In contrast, items or conditions that are in the proximity of, but not intrinsic to, the improvement, that can be readily added, altered, or removed after the improvement is completed, are only "associated with" the improvement. They are not encompassed within its "design."

¶25 Unlike the relationship between the step and its height in ***Rosario***, 304 Wis. 2d 713, or the relationship between the floor drain and its location, depth, and width in *Mair*, 291 Wis. 2d 132, the lighting conditions near the front walk are not an intrinsic and permanent component or feature of the front walk itself. And, unlike the relationship between the elevator and its lack of a safety gate in ***Crisanto***, 355 Wis. 2d 403, adding light fixtures near the front walk would not permanently alter the physical structure of the front walk. Rather, like the relationship between the floor drain and the bathroom's lighting and floor color in *Mair*, 291 Wis. 2d 132, the absence of light illuminating the front walk is a condition extrinsic to the front walk, and one that was readily alterable following the front walk's completion. Indeed, it is undisputed that Kling altered the lighting conditions in the proximity of the front walk in 2002 and thereafter, when he added solar light sticks to illuminate the step. For all these reasons, we reject Acuity's argument that the absence of lighting is in itself a deficiency or defect in the design of the front walk.

### B. Absence of Lighting as a
### Failure to Warn of Design Defects

¶26 Alternatively, Acuity argues that, even if the absence of lighting is not itself a deficiency or defect in the design of the front walk, the statute of repose bars Tauscher's failure to light claim because failing to illuminate an improvement is tantamount to failing to warn of it. Acuity points to *Mair*, 291 Wis. 2d 132; *Rosario*, 304 Wis. 2d 713; and *Soletski v. Krueger International, Inc.*, 2019 WI App 7, 385 Wis. 2d 787, 924 N.W.2d 207, each of which concluded that the plaintiff's failure to warn of a defective improvement claim was barred by WIS. STAT. § 893.89(2). Acuity argues that, based on the same rationale expressed in those cases, Tauscher's failure to light claim is likewise barred by § 893.89(2)'s statute of repose.

¶27 Acuity's analogy to the failure to warn claims in *Mair*, *Rosario*, and *Soletski* is inapt. In each of those cases, it was undisputed that the design of the relevant improvement was defective, and that the defect in the design caused the plaintiff's injuries. *See Mair*, 291 Wis. 2d 132, ¶¶5, 9 (alleging that the design of the drain was defective due to its location, depth, and slope); *Rosario*, 304 Wis. 2d 713, ¶2 (alleging that the height of a step, which violated the building code, was defective); *Soletski*, 385 Wis. 2d 787, ¶5 (alleging that a ramp that lacked guardrails and visual markings was defectively designed). However, the plaintiffs could not maintain a claim based on the improvement's defective design because the statute of repose had long since expired. *Mair*, 291 Wis. 2d 132, ¶¶4, 18; *Rosario*, 304 Wis. 2d 713, ¶¶4, 22; *Soletski*, 385 Wis. 2d 787, ¶25. To avoid dismissal under WIS. STAT. § 893.89(2)'s statute of repose, each plaintiff alleged that the owner of the improvement was liable for failing to warn of its defective condition, and that the owner's failure to warn fell within § 893.89(4)(c)'s

exception for claims that arise from the negligent maintenance, operation, or inspection of an improvement. *Mair*, 291 Wis. 2d 132, ¶26; *Rosario*, 304 Wis. 2d 713, ¶¶5, 14; *Soletski*, 385 Wis. 2d 787, ¶¶5, 14.

¶28 In each case, the court rejected the plaintiff's attempt to elude the statute of repose by repackaging a defective design claim as something else. As the court explained in each case, there was no genuine dispute of material fact that the plaintiff's injuries had been caused by a defect in the design of the improvement, and reading WIS. STAT. § 893.89(4)(c)'s negligent maintenance exception to encompass an owner's failure to warn of a defective improvement would create an exception that would swallow § 893.89(2)'s statute of repose for claims arising out of such defects. *Mair*, 291 Wis. 2d 132, ¶26; *Rosario*, 304 Wis. 2d 713, ¶¶19, 26-30; *Soletski*, 385 Wis. 2d 787, ¶¶17, 19. That is, the plaintiffs' failure to warn claims were based on underlying defects in improvements that were subject to the statute of repose and, therefore, any claims based on the failure to warn of those underlying defects were likewise subject to the statute of repose. *Mair*, 291 Wis. 2d 132, ¶26; *Rosario*, 304 Wis. 2d 713, ¶29; *Soletski*, 385 Wis. 2d 787, ¶¶17, 19.

¶29 Here, as we have discussed, the absence of lighting is not itself a deficiency or defect in the design of the front walk, and Acuity identifies no other deficiency or defect in the front walk's design that caused Tauscher's injuries. Accordingly, unlike the plaintiffs in *Mair*, *Rosario*, and *Soletski*, Tauscher's failure to light claim is not based on an underlying deficiency or defect in the design of an improvement that is itself time barred, and the reasoning from those cases does not support Acuity's argument that it is entitled to summary judgment.

¶30    In conclusion, to the extent Tauscher's negligence claim is based on Kling's failure to illuminate his front walk, Acuity has not shown that it arises out of a "deficiency or defect in the design, land surveying, planning, supervision or observation of construction of, construction of, or furnishing materials for, [an] improvement to real property" that is subject to WIS. STAT. § 893.89(2)'s statute of repose.[8]

### II. Acuity's Arguments Regarding the Elements of Negligence

¶31    Alternatively, Acuity argues that it is entitled to judgment because Tauscher's negligence claim fails as a matter of law for other reasons articulated by the circuit court in its oral decision granting summary judgment. Specifically, the circuit court stated that the law does not require the owner of a private residence to light a private walk with solar light sticks, and that Tauscher failed to present any evidence that Kling had actual or constructive notice of any condition on his property that would have triggered a duty to act. We observe that the motion Acuity filed in the circuit court was limited to the statute of repose, and Acuity's briefing on the motion did not prominently raise these additional arguments about the elements of negligence. However, now that the circuit court has provided these additional reasons for its grant of summary judgment in Acuity's favor, Acuity defends the circuit court's conclusions regarding duty and notice as independent reasons to affirm the grant of summary judgment on appeal.

---

[8] The parties also dispute whether Kling's alleged negligence falls within the exception to the statute of repose found in WIS. STAT. § 893.89(4)(c). Given our conclusion above, we need not resolve that dispute.

¶32     To prevail in a common law negligence claim, "a plaintiff must prove:  (1) the existence of a duty of care on the part of the defendant; (2) a breach of that duty of care; (3) a causal connection between the defendant's breach of the duty of care and the plaintiff's injury; and (4) actual loss or damage resulting from the injury."  *Gritzner v. Michael R.*, 2000 WI 68, ¶19, 235 Wis. 2d 781, 611 N.W.2d 906 (citing *Miller v. Wal-Mart Stores, Inc.*, 219 Wis. 2d 250, 260, 580 N.W.2d 233 (1998)).  The proper interpretation of these elements is a question of law which we review de novo.  *See* *Hoida, Inc.*, 291 Wis. 2d 283, ¶¶22-26.

¶33     Acuity first addresses the circuit court's conclusion that Kling was not legally required to illuminate his front walk with solar light sticks.  It argues that Kling did not have a duty to illuminate his front walk with any light source because no law, statute, or regulation specifically requires it.

¶34     We reject this argument because it is inconsistent with the way the element of duty is addressed under Wisconsin law.  In Wisconsin, every person has a duty to exercise ordinary care in all of the person's activities.  *Megal v. Green Bay Area Visitor & Convention Bureau, Inc.*, 2004 WI 98, ¶22, 274 Wis. 2d 162, 682 N.W.2d 857; *Rockweit v. Senecal*, 197 Wis. 2d 409, 419-20, 541 N.W.2d 742 (1995).  Accordingly, "[w]ithin the framework of a negligence case[,] the particular conduct of [an allegedly negligent party] is not examined in terms of whether or not there is a duty to do a specific act[.]"  *Walker v. Bignell*, 100 Wis. 2d 256, 264, 301 N.W.2d 447 (1981).  Instead, the question is "whether [a person's] conduct satisfied the duty placed upon individuals to exercise that degree of care as would be exercised by a reasonable person under the circumstances."  *Id.*  Therefore, Kling owed Tauscher a duty to exercise ordinary care, and the pertinent question is not whether Kling had a duty to light his front walk, but rather, whether Kling's failure to do so breached the duty of ordinary

care.  *See id.*; *see also* **Nichols v. Progressive N. Ins. Co.**, 2008 WI 20, ¶45, 308 Wis. 2d 17, 746 N.W.2d 220.  That question is more appropriately decided by a jury, even in cases in which the historical facts are largely undisputed.  **Lambrecht v. Estate of Kaczmarcyk**, 2001 WI 25, ¶2, 241 Wis. 2d 804, 623 N.W.2d 751.[9]

¶35  Turning to the circuit court's conclusion about notice, Acuity contends that summary judgment is warranted because Kling did not have notice of the unsafe lighting conditions on his property.  As legal support, Acuity cites to a case that addresses statutory claims under the safe place statute, which require actual or constructive notice of an unsafe condition to maintain certain safe place claims.  *See, e.g.*, **Barry v. Employers Mut. Cas. Co.**, 2001 WI 101, ¶23, 245 Wis. 2d 560, 630 N.W.2d 517.  And as factual support, Acuity relies on Kling's deposition testimony that he believed that two solar light sticks were illuminating the front walk on the evening of Tauscher's fall, and that, if the solar sticks were not present at that time, they had not been missing for long.  Accordingly, putting its assertions about the law and facts together, Acuity asserts that Tauscher's negligence claim fails because she presented no evidence suggesting that Kling had actual or constructive notice of an unsafe condition on his property.

---

[9] In conclusory fashion in its appellate brief, Acuity appears to assert that liability for Kling's alleged negligence should be precluded based on public policy factors—specifically that allowing Tauscher's claim to proceed "would open the way for fraudulent claims or enter a field of claims that has no sensible or just stopping point."  *See* **Smaxwell v. Bayard**, 2004 WI 101, ¶33, 274 Wis. 2d 278, 682 N.W.2d 923 ("in Wisconsin, 'the determination to deny liability is essentially one of public policy rather than of duty'" (quoted source omitted)); *id.*, ¶39 ("even if all the elements for a claim of negligence are proved, or liability for negligent conduct is assumed by the court, the court nonetheless may preclude liability based on public policy factors").  This undeveloped argument is raised for the first time on appeal, and we discuss it no further.  *See* **State v. Caban**, 210 Wis. 2d 597, 604, 563 N.W.2d 501 (1997).

¶36 Acuity's argument about notice fails because notice is not an element of a common law negligence claim. *See Gritzner*, 235 Wis. 2d 781, ¶19; *see also Megal*, 274 Wis. 2d 162, ¶25. We recognize that notice is an element of claims under the safe place statute that are premised on unsafe conditions associated with the structure of a building, *Megal*, 274 Wis. 2d 162, ¶11-20, and that lighting can be one such unsafe condition, *Mair*, 291 Wis. 2d 132, ¶23. However, the elements of negligence claims and safe place claims differ in several respects, and our supreme court recently clarified that, although notice of an unsafe condition is an element of certain safe place claims, it is not an element of common law negligence claims. *Megal*, 274 Wis. 2d 162, ¶25 (concluding that a plaintiff who fails to prove that an owner has notice of an unsafe condition under the safe place statute may still be able to show that the owner failed to exercise ordinary care).[10]

¶37 In summary, Tauscher's negligence claim does not fail as a matter of law and Acuity is not entitled to judgment on that basis.

---

[10] To argue against this conclusion, Acuity cites to language from *Wallow v. Zupan*, 35 Wis. 2d 195, 150 N.W.2d 329 (1967). In *Wallow*, our supreme court stated that, "[i]n common law, as under the safe place statute, if the defendant is to be held liable for negligence, he must have had actual or constructive notice of the condition which caused the plaintiff's fall." *Id.* at 200. That statement of the law cannot survive the decision in *Megal*, in which our supreme court affirmed the dismissal of a safe place claim because the plaintiff provided no evidence that the property owner had notice of an unsafe condition, but permitted a common law negligence claim to proceed without any such evidence of notice. *Megal*, 274 Wis. 2d 162, ¶¶16-20, 25. We recognize that the *Megal* court did not explicitly overrule *Wallow*. However, when decisions of our supreme court conflict, as *Wallow* and *Megal* do in this case, we follow the court's most recent pronouncement. *Estate of Sustache v. American Fam. Mut. Ins. Co*., 2007 WI App 144, ¶19, 303 Wis. 2d 714, 735 N.W.2d 186, *aff'd sub nom. Estate of Sustache v. American Fam. Mut. Ins. Co*., 2008 WI 87, 311 Wis. 2d 548, 751 N.W.2d 845 (citing *Kramer v. Board of Educ. of the Sch. Dist. of the Menomonie Area*, 2001 WI App 244, ¶20, 248 Wis. 2d 333, 635 N.W.2d 857; *Doepke–Kline v. LIRC*, 2005 WI App 209, ¶19, 287 Wis. 2d 337, 704 N.W.2d 605, *review denied*, 2006 WI 3, 286 Wis. 2d 663, 708 N.W.2d 694).

## CONCLUSION

¶38    For all of these reasons, we reject Acuity's argument that Tauscher's negligence claim is time barred by the statute of repose found in WIS. STAT. § 893.89, and we also reject Acuity's arguments that Tauscher's negligence claim fails as a matter of law for other reasons.  Accordingly, we reverse the circuit court's summary judgment order.

*By the Court.*—Order reversed.

Not recommended for publication in the official reports.